LONDON GUARANTY & ACCIDENT CO. *v*. GEDDES.

(*Circuit Court, N. D. Illinois.* 1885.)

CAPIAS AD RESPONDENDUM — ILLINOIS—CONSTITUTION AND STATUTE—GUARANTY COMPANY—ARREST OF DEFAULTING EMPLOYE—BAIL.

A guaranty company that issues a policy to a foreign corporation, guarantying it against loss by reason of the dishonesty or want of fidelity on the part of an agent employed by it in the state of Illinois, who has also given the employing corporation a stipulation that he will save it harmless against any loss sustained by reason of the policy, in the event of embezzlement by such employe from the employing corporation, and payment by it of the loss thus sustained, as stipulated in the policy, is entitled, on affidavit showing such facts, to the issue of a *capias ad respondendum* against the employe, and he will not be entitled to discharge on common bail.

On Motion to Quash.

*Frank H. Collier*, for London Guaranty & Accident Company.

*Abbott, Oliver & Showalter*, for Geddes.

BLODGETT, J.  This is a motion to quash the *capias* and discharge on common bail, upon the ground that the affidavit filed does not show a case which authorizes the issue of a *capias*.  The facts set out in the affidavit are briefly these:  The plaintiff is a corporation created in England, with authority to insure employers against loss by reason of the want of integrity, fidelity, or misconduct of employes.  It is stated in the affidavit that the defendant was an employe of the Grand Trunk Railway Company as their outside ticket agent at Orella, province of Ontario; that, at the request of the defendant, the plaintiff issued to the Grand Trunk Railway Company its policy, wherein it guarantied the railway company against any losses it might sustain by reason of the want of fidelity or honesty of the defendant, as such employe of the railway company, to the extent of $800; that before the issue of this policy the defendant signed a written agreement by which he stipulated that he would himself save the plaintiff harmless against any loss plaintiff might sustain by reason of the policy; and also that any account stated by the general accounting officer or auditor of the railroad company should be conclusive against the defendant as to the amount of any defalcation of defendant that the plaintiff might be compelled to pay.  The affidavit further states that the defendant, after the issue of this policy, embezzled money to the amount of $546, which came into his hands as such agent and employe of the Grand Trunk Railway Company, and that the plaintiff paid the same, and now seeks to recover, or is about to bring a suit to recover, that amount from the defendant.

The only question raised is whether this shows such a case of fraud as justifies the issue of a *capias*.  It is very clear there would be no liability for the amount claimed in this case but for the embezzlement of the defendant as charged.  If this defendant had faithfully and honestly performed his duty to the railway company, the plaintiff would have had no cause of action against him; and I take it there can be no legal difference in the relation which this guaranty company sustains to the defendant, and the relation which a surety on his bond would have sustained.  If he had asked a person to become surety on his bond, and then embezzled the money of his employer, and the surety had been compelled to pay it, it would not lie in the mouth of the defendant to say that the liability to the surety did not arise out of a fraud.  I find no special authority on this question.  This class of contracts is new, and I do not find that they have been very much before the courts as yet; but it seems to me so clear there is hardly room for a doubt that there would have been no right of action but for the fraud of the defendant, and it seems to me his surety should have the same remedy as the original employer would have.  The surety stands in the shoes of the employer, and has a right to be subrogated to all the rights of the employer in the prosecution of dishonest employes.

The case is largely analogous to the very numerous class of cases

that occur in our admiralty courts, where insurance companies are subrogated to the place of the insured in cases of fraud or negligence on the part of other parties, whereby losses occur to ships for which an insurance company is liable and compelled to pay under its policies. Further than that, it seems to me there is a principle of public interest involved in this question that should entitle this plaintiff to all the remedies that the employer would have. We all know that in cases of large corporations, whose sole business it is to make, handle, and disburse money for the benefit of their stockholders, or parties interested in their earnings, if they get their money from the sureties of their dishonest employes, they will not prosecute the employe either civilly or criminally. They will simply stand on their bond, and, if they get the money from the surety, they leave the punishment of the dishonest servant to the man who has suffered, rather than spend their money in prosecutions which either directly or indirectly may punish the wrong-doer; and inasmuch as we know that it is almost the universal custom for bankers, railroad companies, and all large corporations, employing numerous agents and servants, who handle their funds in one capacity or another, to exact a bond, whether it may be such a policy as this or the ordinary bond, it seems to me the common dictates of public policy should give to the sureties of such employes the same remedy that the defrauded employer would have. The constitution and statutes of Illinois authorize the issue of a *capias ad respondendum* upon the filing of an affidavit showing that the defendant "fraudulently contracted the debt or incurred the obligation" respecting which the suit is brought, and there seems to me no room for question, as the record now stands, that defendant fraudulently incurred the obligation he is now under to make good this defalcation to the plaintiff. The motion to discharge on common bail is overruled.