## FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Corporation, v. OLIVER G. NORDMARKEN.

### (155 N. W. 669.)[1]

**Indemnity bond — action on — to recover money — employer — manager — salesman — larceny — embezzlement — findings of court.**

1. In an action brought to recover money paid to the defendant's employer upon a bond by which the plaintiff obligated itself to indemnify the employer against such loss as it might sustain by reason of the larceny or embezzlement of the employer's property by the defendant as its manager or salesman, in the sale of machinery,—held, that the evidence justified the trial court in finding that there was no larceny or embezzlement for which the plaintiff was liable to the employer on the bond.

**Stipulation — guaranty insurance company — employee — voucher — conclusive evidence — liability — void — public policy.**

2. Held, further, that a stipulation between a "guaranty insurance company" and the guaranteed employee, that a voucher or other evidence of payment by the company to the employer shall be conclusive evidence against the employee as to the fact and extent of his liability to the company, is void as being against public policy in so far as it makes such voucher conclusive evidence.

**Voucher — liability — prima facie evidence of the fact — other evidence — effect of.**

3. Held, further, that assuming that such voucher establishes a prima facie liability of the defendant, that the other testimony introduced by the plaintiff as to the facts of the alleged default of the defendant rebuts the prima facie showing.

Opinion filed November 6, 1915.

Appeal from the District Court, McHenry County, 'A. G. Burr, J.

Action by the Fidelity & Deposit Company of Maryland against

Oliver G. Nordmarken. Directed verdict for the defendant, and from an order refusing a new trial, plaintiff appeals.

Affirmed.

Goss and Christianson, JJ., disqualified, did not sit, Hanley, District Judge, sitting by request.

*Cowan & Adamson* and *H. S. Blood,* for appellant.

A clause in an indemnity insurance policy, to the effect that the voucher received on payment of money by such company in settlement of loss sustained by the employer through the acts of the employee shall be conclusive evidence as to the amount and liability, is not void as being against public policy. London Guaranty & Acci. Co. v. Geddes, 22 Fed. 639.

*C. W. Hookway,* for respondent.

A party cannot agree to be bound conclusively by a contract which provides that the voucher taken in settlement of an indemnity loss shall be conclusive evidence of the liability incurred. Such a contract is against public policy. Fidelity & C. Co. v. Eickhoff, 63 Minn. 170, 30 L.R.A. 586, 56 Am. St. Rep. 464, 65 N. W. 351.

HANLEY, Special Judge. The plaintiff is what is termed a "guaranty insurance company," engaged in the business of guarantying employers against the fraud and dishonesty of their employees; and this action was brought by the plaintiff company to recover money paid by the plaintiff to the trustees in bankruptcy of the Western Implement Company, in settlement and compromise of an action brought by the trustees against the plaintiff corporation upon a bond by which the plaintiff obligated itself to make good to the Implement Company, defendant's employer, such loss as it might sustain by reason of the larceny or embezzlement of the defendant as the employee of said Implement Company.

The bond was issued in the year of 1905, upon the solicitation of the implement company, and upon the written application of the defendant, which application, among other things, provided that the defendant agreed "to reimburse the said Fidelity Company for all loss, costs, damages, and expenses, whatever, resulting from any act, default, or neglect of defendant, that said Fidelity company might sustain by reason of executing the bond or renewal thereof;" and defendant also

agreed in said application that the vouchers or other evidence of payment of such loss paid by the said company to the employer under such obligation, together with vouchers or other evidence of the payment of all costs and expenses incurred by the Fidelity Company in adjusting said loss, shall be taken as conclusive evidence, against the defendant, of the fact and extent of defendant's liability under his obligation to the Fidelity Company.

The bond issued by the plaintiff corporation pursuant to the application provided, as far as the terms thereof are material to a decision in this case, that the Fidelity Company agreed to reimburse the employer, Implement Company, for "such pecuniary loss as may be sustained by the employer, of money, securities, or other personal property belonging to the employer, as the employer shall have sustained by any act of larceny or embezzlement committed by the employee."

The answer of the defendant was a general denial, and a denial that the compromise and settlement of the Fidelity Company with the trustees was in good faith, and an allegation that the compromise was fraudulent and collusive, and without the sanction of the defendant.

Upon the trial the evidence offered by the plaintiff consisted of the application and bond, and proof of the execution thereof, and of proof by the testimony of defendant, on cross-examination as an adverse party, of the facts under which the alleged loss occurred. At the close of the plaintiff's case the trial court, on motion of the defendant, dismissed the case.

From an order denying a motion for a new trial, the plaintiff appeals to this court, assigning as error the directing of a verdict of dismissal and refusing a new trial, specifying in its brief and argument two questions: First, that the court erred in ruling that the hereinbefore mentioned provision in the application, making the vouchers conclusive evidence of the fact and extent of the defendant's liability, was void as against public policy, and argue that the said provision at least made the defendant prima facie liable. Second, that the court erred in ruling that the testimony did not affirmatively show a default in the condition of the bond.

We are satisfied that the learned trial court was right in holding that the clause in the application is void as against public policy. As is well said in Fidelity & C. Co. v. Eickhoff, 63 Minn. 170, 30 L.R.A.

586, 56 Am. St. Rep. 464, 65 N. W. 351, a case involving an exactly similar provision in a policy, in which case such provision was held void as against public policy,—"The right of a party to waive the protection of the law is subject to the control of public policy, which cannot be set aside or contravened by any arrangement or agreement of the parties, however expressed. Thus, an agreement to waive the defense of usury is void. So also, according to the weight of authority, is an agreement, made at the time of contracting a debt, to waive the prospective right of exemption." And, as stated in the Eickhoff Case, with such provisions a plaintiff "may, by his own *ex parte* acts, conclusively establish and determine the existence of his own cause of action. In short, he is made the supreme judge of his own case."

Counsel argues that the language used by the Minnesota court is *dicta,* and was only used as guidance to the lower court in the new trial granted. This is probably correct. However, in the same court, in Fidelity & C. Co. v. Crays, 76 Minn. 450, 79 N. W. 531, a case on a bond containing a similar clause, the court held the clause void as against public policy, and adhered to the language in the Eickhoff Case.

Both the Eickhoff and Crays Cases well illustrate the vice of what might happen under such provisions, these cases arising out of a shortage in weight between the grain purchased by a local elevator agent, and the grain shipped out by the agent. The shortage might well have been due to inaccuracy in the scales, or other innocent causes, and yet the agent would be liable merely by a showing that the insurance company paid for the shortage under the terms of the policy, and produced vouchers for such payment and settlement, if such provisions were held valid.

Nor does the counsel cite us any authority holding clauses like this valid. In London Guaranty & Acci. Co. v. Geddes, 22 Fed. 639, the sole case cited by counsel on this point, the objectionable clause was not passed upon by the court. That case arose on a motion to quash the capias and discharge in common bail, and the proceeding turned on the question as to whether the affidavit showed such a case of fraud as justified the issuance of the capias. The affidavit upon which the proceeding was based referred to conditions in the bond similar to the provision in the case at bar, and also charged embezzlement by the prisoner under the terms of the bond. The court did not pass upon the validity of the

"conclusive" provision. And in that case the court uses this language: "It is very clear there would be no liability for the amount claimed . . . but for the embezzlement of the defendant as charged," which is in fact the position of respondent in the case at bar; in other words, that the plaintiff cannot recover unless embezzlement is shown.

In an investigation of this subject, however, we find that Guarantee Co. of N. A. v. Pitts, 78 Miss. 837, 30 So. 758, holds as valid a "conclusive provision" in an application for insurance sued upon in that case. The provision passed upon in the Pitts Case is different from the one involved herein, in that the operation of the provision is limited by its express terms to settlements made in good faith. The distinction between that case and the case at bar is readily seen.

But the appellant contends that even if the "conclusive" provision is void, the introduction of the vouchers in evidence was prima facie evidence of the fact and extent of the defendant's liability to the plaintiff. Even if this is assumed, still the plaintiff went further in the trial of the action, and brought out facts explaining the employee's alleged default, which facts, as hereinafter explained, justified the trial court in concluding that on the whole of plaintiff's case a prima facie cause of action was not established. Fidelity & C. Co. v. Crays, supra.

This brings us to a consideration of the second point raised and argued by appellant, to wit, that the court erred in ruling that the testimony did not affirmatively show a default in the condition of the bond.

A proper consideration of this point necessitates a statement of the facts established concerning the alleged default, which facts, viewed in the light most favorable to the appellant, are substantially as follows: At the time the defendant made application to the plaintiff company for the bond in question, he was an employee of the insured Implement Company, and he was so employed as local manager, with the right and authority to sell machinery for the company for cash or credit. That sometime in 1906 he sold to his brother, a farmer, $1,900 worth of farm machinery on account, taking, either as collateral security or in payment thereof, stock in the Implement Company of the value of $2,000, which stock the brother owned. That the defendant had prior thereto advised the brother to invest in the stock, and that the brother was dissatisfied, and wanted to get out of the deal. That immediately

after making such sale, the defendant notified and informed the Implement Company of the transaction, and turned the stock over to the company. That the company kept the stock and did not repudiate the sale, but did notify the defendant not to make another such deal. That after the expiration of some months an action was brought by the Implement Company against the brother, in which payment for the property was sought, as conceded in the appellant's brief, and that sometime after the commencement of the action against the brother the Implement Company went into bankruptcy and trustees were appointed, and then an action was brought by the trustees against the plaintiff on the bond hereinbefore mentioned, on the ground that the sale was in fact embezzlement, and a default in the conditions of the bond.

Do these facts show embezzlement? We think not. In fact, under the facts developed by the plaintiff's case, we are of the opinion that it shows it was not embezzlement. The appellant bases his contention on § 9931 of the Compiled Laws of 1913, which reads as follows: "If any person being an officer, . . . servant, or agent of any . . . corporation, public or private, fraudulently appropriates to any use or purpose not in the due and lawful execution of its trust, any property which he has in his possession or under its control in virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement." And in this connection it might be well to again note that the provisions in the bond provided for the reimbursement of the insured only for loss sustained by "any act of larceny or embezzlement committed by the employee."

It is therefore clear that there was no default in the condition of the bond, unless the employee's acts amounted to either larceny or embezzlement. It is, of course, admitted that the complained-of acts do not amount to larceny; and we are equally clear that the acts do not constitute embezzlement. It is clear that the defendant as manager of the Implement Company had the right and authority to sell the merchandise of the company, either for credit or cash; and a sale of such merchandise for either credit or cash would be in the due and lawful execution of his trust; nor did the defendant secrete the property or the transaction, but made full disclosure thereof immediately to his principals, and turned over to the corporation the proceeds of the sale, to wit, the account against the brother and the stock delivered by him,

retaining for his own use nothing of the proceeds of the sale, and the Implement Company retain such proceeds, and did not repudiate the transaction.

All these facts and the facts hereinbefore stated show that there was no embezzlement, and that the transaction was ratified.

We are not unmindful of the fact that the appellant contends that there was no ratification pleaded, and that such defense is not available. However, to plead ratification it would have been necessary for the defendant to admit the embezzlement, which he has always denied, and certainly in determining whether or not the transaction was in the due and lawful execution of the defendant's trust the action of his principal in ratifying the transaction and accepting the proceeds thereof is material in determining the nature of the transaction.

Finding no error in the order denying the motion for a new trial, the same is affirmed.