## PEAY *v.* SOUTHERN SURETY COMPANY.

### Opinion delivered December 15, 1919.

1. ESTOPPEL—RATIFICATION.—Where a principal received the benefit of a payment by the surety on his bond in a judgment obtained against the obligee of the bond, the principal will be estopped to deny the authority of the surety to make such payment.

2. PRINCIPAL AND SURETY—LIABILITY OF SURETY.—Generally the liability of the principal is the measure of the surety's liability, and if a surety pay where no liability exists the payment will be treated as voluntary and not recoverable.

3. PRINCIPAL AND SURETY—PAYMENTS BY SURETY.—Where a contractor's application for an indemnity bond provided that, in any accounting between the contractor and the surety, the surety should be entitled to credit for any and all disbursements made in good faith under the belief that it was liable, or that it was necessary to make the same, a surety is entitled to recover payments made and expenses incurred in good faith in investigating claims against the contractor for nonperformance of his contract.

4. MORTGAGE—ABANDONMENT.—A surety which takes a mortgage from its principal to indemnify itself from liability as surety will not be held to have abandoned its mortgage by endeavoring to reimburse itself for expenses incurred out of a judgment recovered by the principal.

5. PRINCIPAL AND SURETY — RECOVERY OF EXPENSES BY SURETY.— Where, under the terms of an agreement of indemnity, the surety was entitled to recover disbursements made in good faith, the surety was entitled to recover the amount expended on attorney's fees and traveling expenses incurred in defending suits, etc.

6. PRINCIPAL AND SURETY—RECOVERY OF PREMIUMS.—Where a contractor paid a single year's premium to a surety company, and defaults of which the company was liable occurred within that year, the company is not entitled to premiums for subsequent years because the liabilities growing out of the defaults were not adjusted for several years.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed in part.

*J. A. Comer* and *Mehaffy, Reid, Donham & Mehaffy,* for appellants.

Before appellee can recover, it must show that the sums alleged to have been paid out were paid, and that it was legally liable for the sums paid under the bond, and that Peay was legally liable for said sums. The liability of a surety is identical with that of the principal. If Peay was not liable for the sums alleged to have been paid, then appellee was not liable and it can not recover from Peay. The liability of a surety is measured by the strict terms of its contract, and can not be extended by construction or implication. Before the surety can be liable the principal must be, and a surety is discharged when liability of the principal is discharged or extinguished. 119 Ark. 102. A surety who voluntarily pays a debt on which a principal is not liable can not recover; he is a volunteer. 52 N. E. 245; 14 Ky. Law Rep. 267; 85 Mass. 524. A surety is discharged by payment of the debt. 96 Ark. 268. A release of the principal releases the surety and the property mortgaged as security. 32 Cyc. 155. All the payments made by appellee for which it now sues were made prior to the decree in the city of Eufaula case in the United States District Court. Appellee was a party to that suit but consented to being made a codefendant, and all these sums were concluded by the judgment in that case. Peay was not a party to that suit, and neither Peay nor appellee were liable for the claims in this suit. All these matters have been adjudicated in another suit between the same parties, and appellant Peay, the principal, recovered judgment against the city of Eufaula. If appellee had not *voluntarily* paid the $2,500, it would be released by reason of the judgment recovered by Peay. 32 Cyc. 152; 40 N. E. 169.

A release of the principal releases the surety and property mortgaged. 32 Cyc. 155.

*Buzbee, Pugh & Harrison,* for appellee.

1. It was not necessary for Peay to be joined as defendant in any of the suits brought against appellee un-

der the laws of Oklahoma. Okla. Rev. Laws 1910, § §
969 and 4694; 161 Pac. 793. Nor was it necessary for
appellee to notify Peay of the making of claims or bring-
ing of suits against appellee as surety on Peay's bond;
but Peay was notified continuously until all these claims
were closed up. Peay had ample time to arrange all
these matters before the suits were brought and settled
by appellee. Peay was duly notified of the Rogers Lum-
ber Company claim, and had a year to adjust same before
suit. He paid no attention to it. The Hutchings attor-
ney's fee and the items of costs and fees to witnesses
should have been allowed by the court. 93 Ark. 530.
Franklin earned his fee, and traveling expenses were in-
curred in the service of Peay and on his behalf. All
these, as well as the amounts paid by Franklin in settle-
ment of Rogers Lumber Company, Eckelcamp and Baker
suits, were paid in good faith, and proper charges against
Peay under his indemnity agreement with appellee and
should be allowed. All these claims were settled with
the consent and on the advice of Peay's attorney, Tis-
dale. Such costs, expenses and attorneys' fees were paid
in defending those suits by appellee and it is entitled to
recover for all of them. 124 Mass. 67; 127 N. W. 848; 17
Mass. 169. The agreement of Peay was to save it harm-
less from all liability, damages, loss, costs, charges and
expenses, including attorneys' fees, and all should be now
allowed on the cross-appeal here. 96 N. W. 782; 134
Ark. 499; 202 Fed. 483; 30 So. Rep. 758; 136 Ark. 227;
175 Pac. 701.

2. The $2,500 paid in compromise settlement of the
city of Eufaula suit was only considered and adjudged
in the judgment recovered by Peay, and the decree of
the lower court against Peay should be affirmed, and ap-
pellee should be given judgment on the cross-appeal for
the items claimed, $766.79.

3. As to marshaling assets, see 3 Pom. Eq. Jur. (2
Ed.), sec. 1414.

HUMPHREYS, J. This suit was instituted in the Pulaski County Chancery Court by appellee against appellants to recover $6,393.26 from Nick Peay, and to foreclose a mortgage given by Nick Peay and R. B. Malone, on the 30th day of January, 1913, to secure said indebtedness. Prior to the institution of the suit, R. B. Malone had died, and the administrator of his estate and his minor heirs, through their guardian, were made parties defendant to the suit, and are a part of the appellants herein. The other appellants, in addition to Nick Peay, were made parties defendant in the suit on account of alleged mortgage and judgment liens held by them upon the same property. There is no controversy in this court concerning the respective priorities of the lien claimants. The only issues involved on the appeal grow out of the judgment rendered against Nick Peay and the lien declared upon the land to secure same. It was alleged in the complaint that appellee had expended the amount aforesaid in liquidation of claims against Nick Peay, growing out of an attempted performance of a contract made by him to construct a water and sewer system for the city of Eufaula, Oklahoma; that said amounts were paid pursuant to and within the terms of an application for and an indemnity bond executed by appellee to said city of Eufaula to guarantee the proper construction of said water and sewer system, in accordance with the contract between said city and Nick Peay. The written application for and the indemnity bonds given by appellee to the city of Eufaula and the State of Oklahoma were made parts of the complaint. That portion of the application fixing the liability between appellant, Nick Peay, and appellee, Southern Surety Company, in case of default in the construction of the water and sewer systems, or in case of failure to pay for labor and material used in the construction thereof, reads as follows: "* * * will at all times indemnify and keep indemnified the company and hold and save it harmless from and against any and all liability, damages, loss, costs, charges and expenses of whatsoever kind or nature

including counsel and attorney's fee, which the company shall or may at any time sustain or incur by reason or in consequence of having executed the bond herein applied for, or by reason or in consequence of the execution by the company of any and all other bonds executed for us at our instance and request, and that we will pay over, reimburse and make good to the company, its successors and assigns, all sums and amounts of money which the company or its representative shall pay, or cause to be paid, or become liable to pay, on account of the execution of any such instrument, and on account of any liability, damage, costs, charges and expenses of whatsoever kind or nature, including counsel and attorney's fees, which the company may pay, or become liable to pay, by reason of the execution of any such instrument, or in connection with any litigation, investigation, or other matters connected therewith, such payment to be made to the company as soon as it shall have become liable therefor, whether the company shall have paid out said sum or any part thereof or not. That in any accounting which may be had between us and the company, the company shall be entitled to credit for any and all disbursements in and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or it was necessary or expedient to make such disbursements, whether such liability, necessity or expediency existed or not.''

The items alleged to have been paid, pursuant to the contract and under the terms of the bond, consisted of · $2,500 paid to compromise a $40,000 suit, which had been brought by the city of Eufaula against Nick Peay, alleging improper construction of the systems and a failure to clean them out, with the costs accruing in the case; a number of payments for labor and materials, alleged to have been used in the construction of the systems; telegraph, railroad fares, special fees for investigating the claims and lawyers' fees in defending suits and adjusting claims.

Appellant Nick Peay filed an answer, denying that he had made default in any particular in the performance of his contract with the city of Eufaula, or that he had failed to pay for any material or labor used in the construction of water and sewer systems for said city.

The cause was submitted to the court, upon the pleadings, exhibits thereto, the evidence of the witnesses and documents adduced and identified by them, from which the court found that appellant Nick Peay was indebted to appellee in the sum of $4,626.83, on account of amounts paid for him under the terms of the application and bonds it had executed for him to the city of Eufala and the State of Oklahoma; that, to secure due payment of said sum, the mortgage, sought to be foreclosed, was executed by Nick Peay and R. B. Malone in his lifetime; that appellee was entitled to a lien upon the land for that amount and a decree of foreclosure. The decree was rendered in accordance with the findings of the chancellor, from which findings and decree an appeal has been prosecuted to this court by appellants. The court found that appellee was not entitled to recover on account of the following claims paid by it: $150 lawyer's fees to W. T. Hutchings; $9.44 for his traveling expenses; $7.35 for the traveling expenses of J. H. Wall, an attorney to assist Hutchings; and $600 additional claims by appellee for premiums on the indemnity bonds, alleged not to have been paid by appellant Peay. From the dismissal of appellee's bill claiming these amounts, the cross-appeal has been prosecuted to this court. The whole case is therefore before us for trial *de novo*.

The evidence on behalf of appellee tends to show that it received notice from the mayor of Eufaula about March 9, 1914, to the effect that appellant, Peay, had violated his contract with the city; that, in April following, it received notice from attorneys claiming the non-payment by Peay of labor and material claims; that it immediately gave Peay notice of these claims, but that he paid little or no attention to them; that it then employed E. J. Franklin to go upon the ground and make

a thorough investigation of the claims; that, on July 14, 1914, the city brought a suit against it for $40,000, on account of Peay's failure to construct the sewer and water systems in accordance with his contract; that soon thereafter a number of other suits were brought against it for claims on account of labor, materials, moneys advanced and rents due on machinery used in the construction of the systems; that, immediately upon the institution of these suits, it gave appellant, Peay, notice to adjust or defend them; that he employed C. J. Tisdale, who rendered advice and assistance in most of the adjustments and settlements; that the claim of Eckelcamp Hardware Company, for $386.54, was investigated and settled for $228.85, on the advice of Tisdale and Hutchings; that the claim of C. K. Baker for a pay roll, representing $655.05, which had been O. K'd as correct by W. A. Wood, appellant Peay's superintendent, was settled for $200; that the claim of the Rogers Lumber Co., for $73.85, was O. K'd by Mr. Wood, but was settled, after judgment was rendered thereon and after it was ascertained that the material sued for was delivered on the job, for $90.26; that the Eufaula National Bank suit, for $3,233.33, and the suit of the Municipal Excavator Company, for $1,500, on account of rents for the use of machinery used in the construction of the work, brought against appellee under the bond, were defeated through the efforts of an attorney who was paid $150 fee, or $75 in each case, and additional smaller items for expenses for himself and assistant attorney; that appellant's attorney, Tisdale, was present and assisted in the defense of these cases; that the suit for $40,000, brought by the city of Eufaula against Nick Peay, was settled on a basis of $2,500, after an inspection by D. D. Smith, an engineer sent by appellee to inspect the systems and after a thorough investigation by Franklin and upon the advice of both Tisdale and Hutchings that a large judgment would be more than likely rendered against appellee on its indemnity bond; that it paid E. J. Franklin a fee of $500 for his investigations and assistance in compro-

mising and settling the claims, including the $40,000 suit by the city of Eufaula against appellee, which investigations and services covered a period of about two years; that the other items it expended were for telegraph and traveling expenses of its engineers and lawyers, and costs incident to the litigation growing out of the adjustments of the claims; that the item of $2,500 paid out by it in settlement of the $40,000 suit brought by the city of Eufaula against it on the indemnity bond was afterwards utilized by appellant Peay in the adjustment and settlement of a suit which he had brought in the United States District Court for the Eastern District of Oklahoma against the city of Eufaula, for the balance due him upon his contract for constructing the water and sewer systems, and that, by the use of the item, he secured a compromise judgment for $2,500 more than he would have otherwise obtained.

The following clause appeared in the judgment rendered in favor of Nick Peay against the city of Eufaula in the United States Court for the Eastern District of Oklahoma: "It is especially agreed that this settlement includes the payment in full of all right of action or claim against the city of Eufaula on the part of the Southern Surety Company for the sum of $2,500, under a judgment formerly rendered in favor of the city of Eufaula and against the Southern Surety Company as surety of said Nick Peay; and thereupon the parties have further stipulated and agreed in open court that judgment might be rendered herein against the city of Eufaula in the sum of $6,000."

. The testimony of appellant, Nick Peay, tended to show that he constructed the water and sewer systems in accordance with his contract and that the city was indebted to him for a large sum at the time it brought suit against his bondsmen, the appellee herein; that he so informed appellee and advised it not to pay anything for an acquittance; that he employed an attorney to defend the suit; that he owed no balance for labor and material that entered into the construction of the systems, and so

advised appellee; that he rendered every assistance to defeat the claims; that the employment of parties to investigate the claims and of attorneys to defend against them was without his consent.

The record in the case is voluminous, and for that reason we have not attempted to set the evidence of each witness out in detail.

It is insisted by appellant, Peay, appellee failed to establish by the weight of evidence that he owed the amounts it expended for him, and that the evidence conclusively shows said appellant was not indebted to the city of Eufaula when the appellee paid the $2,500 item in settlement of the $40,000 suit brought on the bond by said city against appellee. The basis of the latter contention rests on the fact that, after the payment, appellant, Peay, recovered a judgment of $6,000 against said city in the United States Court for the Eastern District of Oklahoma for a balance of $6,000 due him for constructing the water and sewer systems. We think Peay is clearly estopped from raising any question as to his liability on the $2,500 payment. It is apparent from the face of the judgment in the United States court that he received the benefit of the payment in the compromise settlement, thereby increasing his judgment to that amount. The acceptance of a benefit under, necessarily amounted to the ratification of, the payment. The liability for the other payments must be determined on the interpretation of the contract and an analysis of the evidence. Generally, the liability of the principal is the measure of the liability of the surety; so, if the surety should pay where no liability existed against the principal, it would be treated as a voluntary, nonrecoverable payment. This rule, however, may be modified by contract. For example: In the case of *United States Fidelity & Guaranty Co.* v. *Baker,* 136 Ark. 237, a provision in an indemnity bond was held to be legal which provided that a voucher showing payment by the guarantor to the guarantee should be conclusive evidence (except for fraud) as to the fact and the amount of the liability of

the principal to said guarantor. A very similar provision was incorporated in the contract between Peay and appellee. It is as follows: "In an accounting which may be had between us and the company, the company shall be entitled to credit for any and all disbursements in and about the matters herein contemplated, made by it in good faith under the belief that it is, or was, liable for the sums and amounts so disbursed, or it was necessary or expedient to make such disbursements, whether such liability, necessity or expediency existed or not."

This language is quite broad, and our interpretation of it is that Nick Peay is responsible to appellee for all good faith payments it made in absolving itself from the claims made against it on account of the guaranty bonds it executed to the city of Eufaula and the State of Oklahoma, guaranteeing the proper construction of the sewer and water systems in said city, and the payment of all labor and material that entered into the construction thereof. We have carefully read and analyzed the evidence, and our conclusion is that, when measured by the contract fixing the liability of Peay, as interpreted above, it can not be said that the finding of the chancellor against Peay is contrary to the weight of the evidence. On the contrary, we are convinced that appellee paid only such amounts to claimants under the bonds as it believed in good faith Peay owed, after making a very careful investigation and after making every effort to settle the claims for as little as possible. Insistence is also made that the court erred in allowing the items of attorneys' fees, costs, charges for inspection, investigation and traveling expenses. Again appellant is met with the terms of his contract by which he must abide. The contract provides that appellee may recover from Peay any "damage, costs, charges and expenses of whatsoever kind or nature, including counsel and attorney's fees which the company may pay * * * in connection with any litigation or other matters connected therewith." It is suggested, however, that appellee has abandoned its right to a lien under its mortgage in this State

by filing an intervention, seeking satisfaction out of the fund deposited in the United States District Court for the Eastern District of Oklahoma to pay the $6,000 judgment recovered by Nick Peay against the city of Eufaula. The issues involved in the instant case have not been adjudicated in that court, so appellee is not precluded from prosecuting this suit under the doctrine of *res adjudicata,* and we do not think it can be said with reason that a creditor abandons his security by attempting to collect his claim from another source or out of different property from that on which his lien exists.

Under the cross-appeal, it is insisted that the court erred in refusing a judgment for $150, attorney's fees to W. T. Hutchings, traveling expenses of $9.44 paid to him, and $7.35 to his assistant, J. H. Wall. These expenditures were made in defending suits which were brought against appellee on the bonds, and were within the terms of the contract between appellee and Peay. Judgment should have been rendered for them.

It is also insisted on the cross-appeal that the court erred in refusing a judgment for additional premiums. Appellant Peay paid the premium for one year. The record shows that the defaults of Peay under his contract with said city, for which appellee became responsible, occurred within the year, and that appellee received notice of said defaults and failure to pay claims for material and labor within that time. After notice to appellee of Peay's defaults, it could not charge and collect second, third and fourth year premiums just because the liabilities growing out of the defaults were not adjusted for several years. The liabilities accrued during the first year, and appellee had notice of them during that time. *Southern Surety Co.* v. *Perdue,* 134 Ark. 458.

The decree on the direct appeal is affirmed; and, on the cross-appeal, is reversed and remanded with directions to enter a judgment in accordance with this opinion.