### FIDELITY & CASUALTY CO. OF NEW YORK v. HARRISON. ( No. 11166.)

(Court of Civil Appeals of Texas. Fort Worth. May 16, 1925. Rehearing Denied June 20, 1925.)

1. **Contracts ⬸127(3)—Stipulation in application for surety bond, as to conclusiveness of evidence as to fact and extent of applicant's liability, held not void as contrary to public policy.**

A stipulation contained in application for surety bond that any proper evidence of payment by the company of losses shall be conclusive evidence against the applicant of the fact and extent of applicant's liability under the agreement, was not void as against public policy, and proof of payment by surety in good faith to assured of losses incurred through payment of lost checks, though forged, created defendant's liability thereunder.

2. **Appeal and error ⬸909(5)—Presumed that assured paid checks, and that surety reimbursed assured therefor in good faith, where such issue not raised by pleadings.**

In action by surety company against defendant principal, on principal's agreement to indemnify surety for any loss sustained by it under surety bond to save assured harmless from loss in payment of certain lost checks, held, where defendant did not raise issue of fraud or want of good faith in pleadings, it will be presumed that assured paid for such checks in good faith and that surety reimbursed assured therefor in good faith.

3. **Evidence ⬸14—Matter of common knowledge that shrewd business men are often swindled, through passage of forged instruments.**

It is a matter of common knowledge that shrewd business men are, often swindled through the passage of forged instruments.

4. **Indemnity ⬸9(1)—Principal held precluded from denying liability to assured for payment of forged check in view of agreement.**

Where, contemporaneously with execution of surety bond, principal agreed to hold assured harmless from all loss suffered or incurred by assured by reason of the payment of certain lost checks to any one presenting them for payment and asserting any right, title, or interest therein, such agreement precluded principal from asserting defense that he was not liable to assured for sums paid on checks, even though forged, and such agreement barred suit by principal against assured for paying such checks.

5. **Trial ⬸351(2)—Plaintiff waived right to attorney's fees, where issue not submitted to jury.**

Where plaintiff in suit on indemnity bond did not request the submission to the jury of the issue of allowance of attorney's fees, and such issue was not submitted, plaintiff waived its right to recover therefor.

#### On Rehearing.

6. **Appeal and error ⬸747(2), 878(1)—Defendant not appealing from judgment on his plea over, nor filing cross-assignments of error, cannot assert contention thereunder on appeal.**

Where defendant did not appeal from a judgment rendered against him or his plea over, nor file cross-assignments of error, either in trial court or in reviewing court, he was in no position to assert contention thereunder on appeal.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by the Fidelity & Casualty Company of New York against Sidney M. Harrison. From a judgment for plaintiff, in the sum of only $10, plaintiff appeals. Judgment reformed.

Capps, Cantey, Hanger & Short, W. D. Smith, and Warren Scarborough, all of Fort Worth, for appellant.

Greathouse & Low and Herbert C. Wade, all of Fort Worth, for appellee.

DUNKLIN, J. This suit was instituted by the Fidelity & Casualty Company of New York City against Sidney M. Harrison to recover $930, the amount paid out by the plaintiff to the American Express Company under and by virtue of the terms of an indemnity bond executed by the defendant as principal, and by the plaintiff as surety, and from a judgment in favor of the plaintiff for only $10 of the amount sued for, plaintiff has appealed.

During the year 1918, the defendant purchased of the American Express Company at its office in Paris, France, travelers' checks issued by that company payable to the legal holders when countersigned by the defendant, in different denominations ranging from

$10 to $200, each, and aggregating $930. On defendant's return to New York City on his route home to Fort Worth, Tex., he made a written application, dated February 4, 1919, to the American Express Company for the payment of the amounts of those checks, which he claimed had been lost or destroyed, and had not been disposed of by him. The company agreed to pay the same without surrender of the checks at the time, if the defendant would execute to it a bond with the Fidelity & Casualty Company of New York as surety to indemnify the express company against losses sustained by it by reason of having paid the amount of the checks to the defendant without presenting and surrendering them at that time. The indemnity bond so required was furnished and, having been accepted by the express company, it paid to the defendant the total amount represented by the travelers' checks which the defendant claimed to have lost. Later, 18 of those checks were presented to the American Express Company by persons holding them and were paid by that company. And on demand therefor the Fidelity & Casualty Company of New York, surety on the indemnity bond, reimbursed the express company for the amount so paid. This suit was to recover that amount.

The checks issued by the express company to the defendant contained the genuine signatures of the defendant at the top, his signature being written therein at the time of issuance. Just above the signatures were the following words: "When countersigned below with this signature." The name of the payees of the check was left blank following the words "Pay to the order of," and at the bottom the printed word "countersigned" was just above a line on which a blank was left for the signature of the defendant. The checks were all introduced in evidence, and the originals have been brought to this court as part of the record. As written, the name of defendant appears on the line just below the word "countersigned," and after the words "pay to the order of," in the body of the check, the blanks are filled in with pen and ink with the names of divers and sundry persons whose names are likewise indorsed on the backs of the checks. Those checks aggregate the sum of $930.

The only defense offered by Harrison to the suit was that the purported signatures at the bottom of the checks under the word "countersigned" were all forgeries, and the defendant introduced testimony to support that plea, with the exception that he admitted on the witness stand that one of the checks for the sum of $10 was not a forgery. Defendant, Harrison, made the express company a party to the suit and sought a recovery over against it for any sum that might be adjudged against him. The plea was based upon allegations that the payments, made by the express company on the checks, when presented, were made upon forged indorsements and therefore were unauthorized.

The case was tried before a jury, and in answer to special issues a verdict was returned sustaining the defense of forgery as to all the checks except one for $10, which defendant testified was not a forgery. That verdict was the basis of the judgment from which the appeal is prosecuted by plaintiff. The court further decreed that defendant, Harrison, was not entitled to recover any amount against the express company.

The indemnity bond executed by the defendant with the plaintiff as surety, after stipulating that the defendant, Sidney M. Harrison, as principal and the plaintiff company as surety are bound to pay the American Express Company of New York City, state of New York, the sum of $1,020, contained these further provisions:

"Whereas, the principal claims to be the owner of the following travelers' checks issued by the obligee. (Here follows the numbers and amounts of the different checks.)

"Whereas, the principal alleges that the said travelers' checks have been lost or destroyed and cannot be found; and

"Whereas, the obligee is willing to pay to the principal the amount represented by the said checks without first requiring the surrender of the said checks for cancellation if indemnified against all loss, costs, and expenses which may be occasioned it by reason of its so doing.

"Now, therefore, the condition of the foregoing obligation is such that if the above bounden parties shall fully protect, indemnify, and save harmless the obligee from and against any and all loss, costs, and expenses, which may be occasioned it by reason of its having paid to the principal the amount represented by the said travelers' checks without first requiring the surrender of the said checks for cancellation, then this obligation shall be void, otherwise it shall remain in full force and effect."

The indemnity bond was executed by plaintiff company upon the defendant's written application therefor. The application embodied a statement by defendant that he had lost the checks and had not disposed of them, and further stipulated that:

"In consideration of the execution by the Fidelity & Casualty Company of New York, hereinafter called the Company, of the bond herein and hereby applied for, Sidney M. Harrison of Fort Worth, state of Texas, hereinafter called the applicant, agrees as follows: (1) To pay on the execution of the said bond $20.40 as the premium thereon. (2) To indemnify the Company against any losses, damages, costs, charges, and expenses that the Company may in any way sustain, incur, or become liable for in consequence of the said bond, or any renewal thereof, or any new bond issued in continuation thereof, or as a substitute, therefor, and any proper evidence of the payment by the Company of any such losses, damages, costs, charges, or expenses shall be conclusive evidence against the applicant of the

fact and extent of the applicant's liability to the Company under this agreement."

Plaintiff furnished proper and conclusive evidence of the payment by it of the losses sustained by the express company.

[1] Plaintiff's suit against the defendant for reimbursement of the amount it had been compelled to pay the American Express Company was not predicated upon the common-law rules allowing a recovery by a surety against his principal for amount paid by the surety on the principal's debt, but was based upon his agreement contained in subdivision 2, copied above, of his written application to the plaintiff to sign said indemnity bond as surety. That agreement by the defendant is plain, specific, and unambiguous and entitled plaintiff to a judgment in its favor, if given legal effect as written, as we believe should be done.

Appellee insists that since the jury found that the checks when presented were paid by the American Express Company upon forgeries of his signature, the loss, sustained by plaintiff surety company in reimbursing the express company for such payments, was not such a loss as is legally comprehended in the language used in his contract of indemnity, referred to above, or in his separate contract with the plaintiff. Appellee especially attacks as contrary to public policy and therefore void the language contained in his separate agreement with the indemnity company, to wit:

"And any proper evidence of the payment by the Company of any such losses, damages, costs, charges, or expenses shall be conclusive evidence against the applicant of the fact and extent of the applicant's liability to the Company under this agreement."

The cases chiefly relied upon by appellee to support that contention are Fidelity & Casualty Co. of New York v. Eickhoff, by the Supreme Court of Minnesota, 63 Minn. 170, 65 N. W. 351, 30 L. R. A. 586, 56 Am. St. Rep. 464; Fidelity & Deposit Co. of Maryland v. Nordmarken, by the Supreme Court of North Dakota, 32 N. D. 19, 155 N. W. 669; Fidelity & Casualty Co. of New York v. Crays, by the Supreme Court of Minnesota, 76 Minn. 450, 79 N. W. 531; Guarantee Co. of N. A. v. Charles, by the Supreme Court of South Carolina, 92 S. C. 282, 75 S. E. 387, Ann. Cas. 1916B, 687; Jones v. Enoree Power Co., by the same court, 92 S. C. 263, 75 S. E. 452, Ann. Cas. 1914B, 293.

The case first cited (Fidelity & Casualty Co. v. Eickhoff) was the earliest of those decisions, and it is cited in the opinions in the other decisions. In that case the Fidelity & Casualty Company sued Eickhoff to recover the amount it had paid to the Red River Elevator Company, Eickhoff's employer, under an indemnity bond executed by Eickhoff with the casualty company as surety, stipulating that the principal and surety would reim-

burse said employer for all losses sustained by it by reason of the infidelity of Eickhoff as its receiving agent in one of its grain elevators. The bond further provided that the voucher, or other evidence of payment by the casualty company to the elevator company, should be conclusive evidence of the fact and extent of Eickhoff's liability to the elevator company. The court held that the provision was void, because against public policy, using the following language:

"In the present case the attempt is to provide that, after the alleged cause of action has accrued, the plaintiff shall be the sole and conclusive judge of both its existence and extent. Such an agreement is clearly against public policy."

The other decisions cited above are substantially to the same effect.

Opposed to the decisions noted above, appellant has cited the following decisions in which it was held that a stipulation in an agreement, to the effect that any proper evidence of the payment by a surety company would be conclusive evidence against the principal on an indemnity bond of the fact and extent of his liability to the payee of the bond, is not contrary to public policy, but is a valid and binding agreement. Guarantee Co. of N. A. v. Pitts, 78 Miss. 837, 30 So. 758, by the Supreme Court of Mississippi; American Bonding Co. of Baltimore v. Alcatraz Const. Co., 202 F. 483, 123 C. C. A. 225, by the Circuit Court of Appeals; U. S. Fidelity & Guaranty Co. v. Baker, 136 Ark. 227, 206 S. W. 314, by the Supreme Court of Arkansas; Illinois Surety Co. v. Maguire, 157 Wis. 49, 145 N. W. 768, by the Supreme Court of Wis.; Nat'l Surety Co. v. Fulton, 192 App. Div. 645, 183 N. Y. S. 237, by the Supreme Court of New York; Nat'l Surety Co. v. Casner, 253 S. W. 1057, by the Supreme Court of Missouri; Peay v. Southern Surety Co., 141 Ark. 265, 216 S. W. 722, by the Supreme Court of Arkansas.

In the case of Guarantee Co. of North America v. Pitts, cited above, the Supreme Court of Mississippi used the following language:

"There is nothing wrong or unreasonable, or against public policy, in this stipulation. Parties sui juris may lawfully make such stipulations, and are bound by them. Under such contract the company was authorized in advance, as a condition of guaranteeing, to exercise discretion as to paying any demand made by the holder of the guarantee, and was bound only to act without fraud in settling a claim, and, thus paying, is entitled to hold the party guaranteed for reimbursement; and the voucher proves the claim, if not shown to have been infected with fraud. The expense, delay, trouble, and risk of loss to the guarantee company is a sufficient safeguard against an unwarranted payment; and, without such a stipulation as complained of here, guarantee companies could not safely do business anything like as cheaply as they do, and to the evident

advantage of the parties and of the general public."

[2] The other decisions last cited are substantially to the same effect and upon the same reasoning, all of them, however, qualifying the holding with the statement that the action of the surety company in making the payment must be in good faith and free of fraud. We adopt the conclusion so reached in those decisions, because we believe the same is sound, and it is directly applicable to this case. In his pleadings, the appellee did not tender the issue of fraud or want of good faith on the part of the express company in paying the checks, or on the part of the indemnity company in reimbursing the express company for the amount so paid by the latter, and no evidence was offered tending to sustain any such contention if it had been made. Hence, the presumption must be indulged that the express company paid the checks in good faith and that the indemnity company reimbursed the express company for such payments in good faith, and without any fraudulent collusion with that company or with any one else.

[3, 4] Since the checks by their terms were payable upon presentation and surrender, it is clear that it was within the contemplation of the parties that they might thereafter be presented by persons claiming the right to collect them, and with the name of the defendant countersigned thereon at the places provided for his signature by some person other than defendant, if his representation made at the time in effect that he had not countersigned them was untrue, and that the express company might pay them to such persons and thereby lose what it had already paid to the plaintiff on the same checks without requiring him to produce them. It is a matter of common knowledge that shrewd business men, even bankers who are supposed to be experts on handwriting, are often swindled through the passing of forged instruments; and even in the present suit the jury found that the checks in controversy were forgeries, notwithstanding a striking similarity we observe between the alleged forged signatures and those admitted by the defendant to be genuine, and notwithstanding the further fact that indorsements on the backs of the checks indicate that they were purchased by divers and sundry persons, including banks, upon the belief that they had been properly countersigned by the defendant; and which findings by the jury of forgeries were not challenged by appellant, either in the trial court or in this court. Indeed, contemporaneously with the execution of the bond, defendant executed a separate written agreement with the express company binding himself to —

"hold harmless and indemnify the said American Express Company, its successors or assigns, from and against any and all liability, loss, costs, damages, or expenses which may hereafter be suffered or incurred by the said American Express Company, its successors or assigns, for or by reason of the payment of the amount of said cheque(s), as aforesaid, or the nonpresentation thereof at the time of such payment, or the assertion by any person of any right, title or interest in said cheque(s) or of any claim (s) or demands against the said American Express Company, its successors or assigns by or under the said cheque(s)."

It thus appears that the defendant specifically agreed to hold the express company harmless for the payment of the checks to any one presenting the same for payment and asserting any right, title, or interest in them. And in the absence of fraud or bad faith on the part of the express company in paying the checks when presented, that language would preclude the defendant from asserting the defense that he was not liable to the express company for sums paid on the checks, even if they were forged, and would also bar his suit to recover on his plea over against that company in any event. Appellee has cited the following cases as being in line with the decisions cited by him and already noted, to wit: Soc. Camp, W. O. W., v. Robinson, 187 S. W. 215, by the Court of Appeals at Dallas; Sup. Lodge, K. of P., v. Wilson, 204 S. W. 894, by this court, in each of which cases it was held that a stipulation in a life insurance policy, to the effect that the absence or disappearance of a member from his last-known place of residence for any length of time shall not be sufficient evidence of the death of such member, and no right shall accrue under his certificate of membership to a beneficiary until proof of death be made of the member while in good standing, was void, because contrary to a statute of the state. That statute provides that:

"Any person absenting himself beyond sea or elsewhere for seven years successively shall be presumed to be dead, in any cause wherein his death may come in question, unless proof be made that he was alive within that time." Rev. St. art. 5707.

Those decisions have no application to this cause, for the reason that the stipulation in the policy was clearly in conflict with the statute which fixed a rule of evidence for the guidance of courts.

[5] In addition to the sums paid to the American Express Company, plaintiff also sought to recover $250 as attorney's fees incurred by it in the prosecution of this suit, and which was claimed under the terms of defendant's express contract with the plaintiff as a consideration for the execution of the indemnity bond to the express company, and plaintiff offered evidence sufficient to prove that the amount so prayed for was the reasonable value of such services. However, that issue was not submitted to the jury, nor did plaintiff request its submis-

sion. Under those circumstances, plaintiff waived its right, if any it had, to recover any sum as attorney's fees. G., H. & S. A. Ry. Co. v. Price (Tex. Com. App.) 240 S. W. 524; Tex. City Transportation Co. v. Winters (Tex. Com. App.) 222 S. W. 541; Pub. Service Co. v. Tracy (Tex. Civ. App.) 221 S. W. 637.

For the reasons noted, the judgment of the trial court is so reformed as to decree a recovery by plaintiff against the defendant Harrison for the sum of $930, with interest thereon at the rate of 6 per cent. per annum from June 5, 1924, the date of the trial in the lower court. In all other respects the judgment is left undisturbed.

### On Motion for Rehearing.

In his motion for rehearing, appellee for the first time insists that this court should render judgment in his favor over against the American Express Company for the same amount which this court has rendered judgment against appellee in favor of the appellant Fidelity & Casualty Company of New York. It is insisted in substance that since the jury found that the counter signatures of appellee upon the checks were forgeries, the express company was not legally liable to pay the same to the parties holding them, and that therefore the express company sustained no loss by reason of having paid the amounts of the checks to appellee within the meaning of the condition of the bond executed by appellee to the express company, and which condition is shown in the opinion on original hearing. In that connection, the contention is made that the express company had no right to demand of appellee or the surety company reimbursement for the amounts paid out to the holders of the checks when presented, and that therefore appellee should recover over against the express company any judgment recovered against him by appellant, Fidelity & Casualty Company.

[6] As pointed out in the original opinion, the trial court expressly adjudged that the appellee was not entitled to recover any amount over against the express company. The appellee did not appeal from that judgment which was rendered on his plea over against the express company, nor did he file any cross-assignment of error either in the trial court or in this court. Under such circumstances, the appellee is in no position to assert that contention, and the same is overruled for that reason. National Bank of Cleburne v. Carper, 28 Tex. Civ. App. 334, 67 S. W. 188; Anderson v. Silliman, 92 Tex. 560, 50 S. W. 576; Farris v. Gilder (Tex. Civ. App.) 115 S. W. 645; Stewart v. Tolar (Tex. Civ. App.) 250 S. W. 274.

Furthermore, as pointed out in the opinion on original hearing, contemporaneously with the execution of the indemnity bond in controversy, appellee executed a separate written agreement with the express company by the terms of which he specifically agreed to hold the express company harmless for the payment of the checks to any one presenting them for payment and asserting any right, title, or interest in them.

We have again considered the issues, as between appellee and appellant, and are convinced that the conclusions reached by us on original hearing are correct.

Accordingly the motion for rehearing is overruled.