FIDELITY & CASUALTY COMPANY OF NEW YORK v. ELVIRA E.
CRAYS.

June 9, 1899.

Nos. 11,487—(39).

**Fidelity Bond—"Shortage"—Finding Sustained by Evidence.**

In an action brought to recover money paid to the defendant's em-
ployer upon a bond by which the plaintiff obligated itself to indemnify
the employer against such loss as it might sustain by reason of the fraud
or dishonesty of the defendant as its buyer or receiving agent at one of
its grain elevators, the alleged default of the defendant being a "short-
age" in his grain account, held, that the evidence justified the trial court
in finding that there was no shortage for which the plaintiff was liable
to the employer on the bond.

**General Finding that Allegations Are Untrue.**

A general finding that each and all of the allegations of the complaint are
untrue is equivalent to a special finding as to each allegation that it is un-
true. Hence, if the finding is justified by the evidence as to one allegation,
which, alone and independently of the others, would justify the con-
clusions of law in favor of the defendant, the fact that the finding as to
some other allegation is unsupported by the evidence is error without
prejudice.

**General Finding and General Verdict.**

Case distinguished from a general verdict where two issues are sub-
mitted to a jury (one erroneously), upon either of which the verdict may
have been found.

**Voucher Conclusive Evidence—Fidelity & C. Co. v. Eickhoff Followed.**

A stipulation between a "guaranty insurance company" and the guar-
antied employee that a voucher or other evidence of payment by the com-
pany to the employer shall be conclusive evidence against the employee
as to the fact and extent of his liability to the company, is void, as being
against public policy, in so far as it makes such voucher conclusive evi-
dence. Following Fidelity & C. Co. v. Eickhoff, 63 Minn. 170.

Action in the district court for Faribault county to recover $265.-
80, being the amount paid by plaintiff to the Peavey Elevator Com-
pany, defendant's employer, on account of an alleged shortage of
defendant, upon a bond executed by plaintiff in favor of the Ele-

vator Company. The case was tried before Quinn, J., who found in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Van Fossen & Frost,* for appellant.

Plaintiff made out a prima facie case by introducing in evidence defendant's application for a bond, the bond, the claim of loss put in by the elevator company, and the voucher signed by it showing payment by plaintiff to it of $165.80 in settlement of defendant's shortage. Such provisions as that in the bond have been repeatedly upheld in England. London v. Bailey, L. R. 3 Q. B. D. 217; Wilson v. Glasgow, 5 Sc. Sess. Cas. (4th Ser.) 981; Glasgow v. Dempsey, 3 Cowp. Just. 440; Scott v. Avery, 5 H. L. Cas. 811; Brown v. Overbury, 11 Ex. 715. To the same effect are Boston v. Gray, 6 Met. (Mass.) 131, 165; Mitchell v. Kavanagh, 38 Iowa, 286. Even in those courts which purport to sustain, to the fullest extent, contract provisions making certificates of certain persons conclusive evidence between the parties to an action, the decisions are, in effect, merely that such decisions of the parties are prima facie evidence of certain facts. Such decisions are final and conclusive only in the absence of fraud, gross mistake, bad faith, and failure to exercise honest judgment. See St. Paul & N. P. Ry. Co. v. Bradbury, 42 Minn. 222, 227; Kihlberg v. United States, 97 U. S. 398. The foregoing decisions throw light on the reasons which actuated the court in Fidelity & C. Co. v. Eickhoff, 63 Minn. 170, the decision in which case cannot be construed as an attempt on the part of the court to make a contract for the parties. Omitting the word "conclusive" in the stipulation in that case, the contract was valid. A contract should be supported, rather than defeated. Smith v. Packhurst, 3 Atk. 135. This rule does not require that every part be given effect. Bouvier, Law Dic. 386; Simpson v. Vaughan, 2 Atk. 32; 2 Parsons, Contr. 637. Though the provision be not sustained to the extent of holding the voucher conclusive, it may still be held to be prima facie. Hursey v. Marty, 61 Minn. 430; Beuchaine v. McKinnon, 55 Minn. 318; Schmitt v. Common Council, 111 Mich. 99.

*Andrew C. Dunn,* for respondent.

MITCHELL, J.

E. W. Crays was the original defendant in this action. He subsequently died, and the administratrix of his estate was substituted in his place, but for convenience we shall refer to the deceased as the defendant. The plaintiff is what is termed a "guaranty insurance company," engaged in the business of guarantying employers against the fraud or dishonesty of their employees. This action was brought to recover money alleged to have been paid to the Peavey Elevator Company, defendant's employer, upon a bond by which the plaintiff obligated itself to make good and reimburse to the elevator company such loss as it might sustain by reason of the fraud or dishonesty of the defendant as its receiving agent and buyer of grain at one of its grain elevators for the year commencing August 15, 1893. The bond is set out in the complaint, and is identical in its terms and conditions with the one considered in Fidelity & C. Co. v. Eickhoff, 63 Minn. 170, 65 N. W. 351, and the complaint is, mutatis mutandis, substantially the same. Defendant's answer was a denial of all the allegations of the complaint except that he acted as the agent of the Peavey Elevator Company in the purchase of grain at one of its elevators from September 10, 1893, to May 1, 1894, and contained an allegation that he had delivered and turned over to it all the grain which he had purchased or received for it. The finding of the court was that each and all of the allegations of the complaint (except as to the corporate capacity of the plaintiff and the Peavey Elevator Company) were untrue.

This general finding amounts, of course, to findings that the defendant never requested the plaintiff to execute a bond "in the form and of the kind" set up in the complaint, and that there was no shortage or default on part of the defendant for which the plaintiff was liable on its bond. The plaintiff challenges these findings as not being supported by the evidence. Its counsel take the further position that, if any one of the findings on any issuable fact included in this general finding is not justified by the evidence, a new trial must necessarily follow, inasmuch as we cannot tell but that the court rested the decision of the whole case upon the erroneous finding. In this counsel have been led into error by assuming that

the case is analogous to a general verdict where two independent questions have been submitted to the jury (one erroneously), upon either of which the verdict may have been found, as in Peterson v. Chicago, M. & St. P. Ry. Co., 36 Minn. 399, 31 N. W. 515.   A general finding that each and all of the allegations of the complaint are untrue is the equivalent of specific findings that each allegation is untrue.   Hence, if the finding as to any one issue, which, alone and of itself, will support the conclusions of law, is justified by the evidence, the fact that the finding upon some other issue is not justified by the evidence would be error without prejudice.

Upon the trial the evidence offered by the plaintiff naturally divided itself under three heads, viz.:   (1) For the purpose of proving that it executed the bond at the request of the defendant; (2) that the defendant was guilty of fraud or dishonesty for which it was liable to the elevator company according to the terms of the bond; and (3) that it had paid the loss or shortage to the elevator company.   It may be stated in this connection that the alleged default on the part of the defendant was failing and refusing to deliver and turn over to the elevator company all the grain which he had bought and received for it.   We shall assume, without deciding, that the evidence was conclusive that the bond of indemnity declared on was in the form and of the kind requested by the defendant, and direct our attention to the evidence of a "shortage" for which the plaintiff was liable to the elevator company.

It will be seen from the examination of the bond that the plaintiff was only liable for acts of fraud or dishonesty on the part of the defendant personally, and not for his errors, mistakes, or mere negligence.   The mode prescribed for ascertaining the shortage in the grain accounts of receiving agents at elevators was as follows:

"There shall be deducted from the total amount of grain and dockage received by the receiving agent at said elevator or elevators the amount of grain on hand, screenings and dirt from such grain as has been cleaned at said elevator or elevators, together with the amount of shipments based upon weights of grain and dockage at terminals; and, if the result shows a deficit, and the shortage is not caused by the various exceptions agreed to, this proof of loss will be accepted as binding on the part of company."

We shall also assume, without deciding, that this mode of ascertaining a shortage is binding on the agent guarantied as well as upon the plaintiff, and that a shortage ascertained in the mode prescribed is evidence not only of the fact and amount of a shortage, but also that it was caused by the fraud or dishonesty of the agent, although so to hold would practically render the agents guarantors not only of the absolute accuracy of their own weights, but also of the weights at terminals, with which they have nothing to do, and over which they have no control, and this, too, under the penalty of being branded with fraud and dishonesty if there is any discrepancy between the two weights. But, if it is to be held that agents have assumed any such drastic liabilities, certainly the plaintiff should be held very strictly to the mode of proof prescribed in the bond.

The method of proving defendant's "shortage" adopted on the trial, and the way the elevator's account with him was kept, was to charge him with the amounts of grain which he reported from day to day that he had bought and taken in at the elevator, and to credit him with the alleged weights at terminals to which the wheat had been shipped by order of the elevator company. But there is not a particle of competent evidence of these terminal weights. The evidence shows that the grain was from time to time shipped out of the elevator by the defendant, and consigned to different parties at different places, as directed by the elevator company. The grain was not weighed at the elevator when shipped out, because the elevator company furnished no facilities for doing so. The grain, if weighed at all at the places of consignment, was weighed by the consignees, who made reports to the elevator company containing the statements of what the weights were. It was with the weights as given in these statements that the elevator company credited the defendant, and it is by deducting the amount of these weights from the amount of the grain received by the defendant as contained in his reports that the alleged shortage is arrived at. It will be seen from this that the only evidence of the terminal weights was the unsworn say so of the various consignees.

But it is said that when the traveling agent of the elevator company presented the defendant with a statement of his account, made up on this basis from the elevator company's books, he impliedly ad-

mitted the correctness of the alleged terminal weights by not disputing them, and conceding the shortage. He had no knowledge or means of knowledge as to the correctness of these so-called "terminal weights," and the company's agent presumably knew the fact. The most that can be claimed is that when, under these circumstances, he was presented with the elevator company's statement of his account, he did not dispute its accuracy, having at that time no assured grounds for doing so, but merely stated that he could not account for the apparent shortage. In addition to this entire lack of competent evidence as to the terminal weights, the defendant, as a witness in his own behalf, testified positively that he shipped out at the direction of the elevator company all the wheat he took in or received for it, and never sold or disposed of any of the grain in any other way, and never used or converted to his own use a particle of the wheat, and that he never admitted that there was any shortage. There was no evidence in the case tending in the least to impeach or cast suspicion on his honesty or integrity, unless it was the bare fact of this alleged shortage of about 330 bushels out of all the wheat he handled from September to May. Upon this state of the evidence the trial court was amply justified in finding that there was no shortage proven, at least none for which the plaintiff was liable to the elevator company.

In this case, as in the Eickhoff case, the guarantied agent, in his application for a guaranty bond, stipulated that the voucher or other evidence of payment by the plaintiff to the elevator company should be conclusive evidence against him of the fact and extent of his liability to the plaintiff. In the case referred to we held that this stipulation was void, as being against public policy, in so far as it made such voucher or other evidence of payment conclusive. Counsel suggest that this was obiter, and ask us to reconsider the question. It is true that in one sense it was obiter, the question having been considered merely with reference to a future trial; but we see no good reason for changing our views, and therefore adhere to what was said in that case. And, assuming that the voucher or evidence of payment introduced in this case was prima facie evidence of the fact and extent of defendant's liability to the plaintiff, shifting the burden of proof upon the defendant, we are of the

opinion that the trial court was justified in concluding that this prima facie case was sufficiently rebutted.

Counsel have assigned as error numerous rulings of the trial court in admitting evidence, but, as they have not referred us to the pages or folios of the paper book where these rulings can be found, we do not feel called upon to search through the voluminous record to find them. In the brief the principal question discussed under this head is the admissibility of the books of account, or transcripts of them, containing the account kept by the elevator company with the defendant, made up in the manner already described. The original reports of the defendant to the elevator company of the amount of wheat bought, from which the debtor side of the account was made up, were all in evidence, and hence the plaintiff already had all the benefit which it could possibly have had from that side of the account. From what has been already said as to the sources from which the credit side of the account was made up, it is manifest that it was inadmissible, being merely the elevator's record of the substance of hearsay evidence. On this ground, if no other, there was no error in excluding the books.

Order affirmed.