Nellie Fleming, Appellee, v. Merchants' Life Insurance Company, Appellant.

INSURANCE: Actions on Policies—Contract Provisions in re Evidence. The "right of contract" does not embrace the right of an insured and insurer to prescribe or control in advance the course of remedial justice, in the event that the policy becomes the subject of litigation. So held where the court held void a policy provision that "Disappearance or long continued absence of the member, unheard of, shall not be regarded as evidence of death or of any right to recover."

Evans, J., dissents as to effect of the policy provision in question.

*Appeal from Polk District Court.*—Thomas Guthrie, Judge.

December 16, 1920.

Opinion on Rehearing June 23, 1922.

ACTION at law, for the recovery of life insurance. Judgment for the plaintiff, and defendant appeals. Upon the original submission of the cause, an opinion was filed affirming the judgment below. See 180 N. W. 202. A petition for rehearing was granted and resubmitted upon the original record, with further arguments by counsel.—*Affirmed.*

*George E. Brammer, S. E. Knappen,* and *Lehman, Seevers & Hurlburt,* for appellant.

*Nourse & Nourse,* for appellee.

WEAVER, J.—On February 6, 1908, the defendant issued a policy or certificate insuring the life of Michael Fleming. In April, 1912, the insurance being still in force, Fleming left home and went to Canada, with the avowed purpose of making a home for himself and family. Soon after reaching Canada, he wrote an affectionate letter to his wife, expressing his purpose of sending for his family as soon as he got settled. The letter was answered in similar spirit by the wife; but at that point Fleming seems to have disappeared, and all efforts of his friends to locate or obtain news of him have been fruitless. The wife, encouraged by the advice of the company's agents and representatives, kept up the payments of the assessments and dues which the company continued to levy until August, 1919, a period of more than seven years after Fleming's disappearance, and then brought this action to recover the indemnity. The defendant plants its defense upon one of its by-laws, which reads as follows:

"Disappearance or long continued absence of the member unheard of shall not be regarded as evidence of death or of any right to recover."

Their argument is that, if this provision is held to be valid, and proof of the long continued absence of Fleming is not to be admitted in evidence for any purpose, then the verdict for the plaintiff is left without sufficient support to sustain it.

If the premises be sound, the argument is, of course, unanswerable. This leads us directly to the heart of the case. Is the quoted by-law a valid enactment, and will it be allowed to con-

trol or limit the effect of evidence otherwise admissible under the universally recognized rules of the law of evidence? Counsel for appellant frankly accept this issue, and say that the only question involved in this appeal is whether this by-law is valid. Other incidental or collateral questions were broached on the trial, and perhaps given undue prominence in the charge of the court to the jury; but, accepting the proposition of the appellant that the vital question is the validity of the by-law, we shall confine our attention thereto.

I.    In final argument on rehearing, appellant's counsel approach the proposition by asking, "If an insurer may except from the hazard death by suicide, or in war, or in a foreign country, why may not presumptive death be excepted?" and then answer their own question by saying that "not a single valid reason can be urged against the exception." This proposition, stated with so much confidence, illustrates a misconception which pervades the entire argument: the notion that to sustain the plaintiff's claim is to permit her to recover for what counsel call "presumptive death" of the insured, as distinguished from his "actual death." But no such distinction exists. The contract does *not* insure against "presumptive" death, but against actual, physical death—extinction of life; and if the plaintiff has not made a case from which the jury may properly find that Michael Fleming is actually dead, she ought not to recover. The word "presumption" or "presumptive," used in this connection, relates solely to the *evidence* by which the fact of actual death may be judicially determined. Long continued absence of the insured, unheard of, no matter how protracted, is not death, either presumptive or actual, within the terms of the contract. It is simply a material fact from which, in connection with other pertinent facts and circumstances, the conclusion of actual death may be drawn by the jury. True, the conclusion may be wrong; but this may also happen where the fact of death has been established by evidence of eyewitnesses. The witnesses may lie, or be honestly mistaken, and the insured person may be still alive, in hiding or in prison, or in some hospital for the insane; but the adjudication of death and the judgment for recovery of the indemnity are

none the less valid and enforcible simply because of the naked possibility of a fact of which there is no pretense of evidence.

II.  The by-law in question is not a simple provision excluding the common-law rule making the fact of seven years' absence, unheard of, presumptive evidence of death.  It goes much further than that, and provides that disappearance or long continued absence *"shall not.be regarded as evidence* of death or of any right to recover."  .There is a world-wide difference between these two propositions.  The first does no more than do away with the presumption supposed to arise from the fact, but does not destroy its character as evidence as a pertinent circumstance bearing upon the issue being tried; but the other proposition inhibits the consideration of such fact as evidence at all or for any purpose, in establishing a right of recovery.  For example, if the evidence in this or other similar cases had traced the insured person to San Francisco, on the very eve of the destruction of that city by earthquake, or to Johnstown, Pennsylvania, immediately before the great flood swept over that ill-fated city, or to Galveston, Texas, just in time to be exposed to the storm and tidal wave which brought death and destruction to thousands, and thus far the evidence had been clear and satisfactory, it might be said, perhaps, that this alone would not sustain a recovery, for the insured man *may* have been among the few fortunate survivors; but if that showing should be supplemented by proof that from the date of the disaster he had utterly vanished from the sight and knowledge of living men, and if, though there was no known reason why he should voluntarily abandon home, family, and friends, yet no communication from him, direct or indirect, had ever been received by them, such showing, added to the proved facts already enumerated, is sufficient to establish the fact of his actual death, to a moral certainty.  No room for reasonable doubt would remain; and yet, if the appellant be correct, and this by-law be held to control the ruling of the trial court, that vital fact must be excluded, and the widow go out of court empty-handed.

Disappearance or long absence, even if denied the force of presumption of death, may be, and often is, very material

evidence. See *Tisdale v. Connecticut Mut. L. Ins. Co.*, 26 Iowa 170. To take away the presumption relieves the defendant of a burden, but does not deny to the plaintiff the benefit of the fact shown, as a circumstance to be considered by the jury. To take away the evidence entirely is to give to the defendant the power to block the wheels of justice, and "makes it practically impossible to make proofs of death" in many cases of undoubted merit. *Sovereign Camp v. Robinson*, (Tex. Civ. App.) 187 S. W. 215.

It is true that, within certain limitations, parties may enter into any contract and bind themselves by its terms, even though they appear unreasonable to the average mind; but this has respect to their personal relations and dealings with each other in matters concerning the subject of their contract; but it does not include the right to prescribe or control in advance the course of remedial justice, in the event that their contract becomes the subject of litigation. The state has provided courts, to which is confided jurisdiction to try and dispose of the controversies which may be brought before them. Generally speaking, every controversy brought into court involves some one or more disputes of fact; and it is for the court to ascertain, with such reasonable certainty as may be, the truth of these disputes. This is arrived at by hearing and considering evidence. The experience of centuries of lawmaking and law administration has demonstrated that this is best accomplished by observing and adhering to the rules which collectively constitute the "law of evidence," and by refusing to allow them to be perverted or avoided in the interest of the parties, or either of them. If a plaintiff or defendant goes into court, he must expect to make his case and bring his proof in the manner which is prescribed by the established law of the jurisdiction; and that he may not, in the contract upon which he sues or is sued, prescribe or control the evidence by which the truth of the controversy is to be determined, by suspending application of pertinent rules, may be regarded as well settled. It may be admitted that cases are to be found in which this principle appears to have been overlooked or violated. The only one of our decisions which is open to that suggestion is *Roeh v. Business Men's Prot.*

*Assn.*, 164 Iowa 199, in the discussion of which language is used which is capable of the interpretation counsel place upon it. We have no purpose to question its authority in a case falling strictly within its class, but we are not inclined to extend it so far as would be required to cover the case at bar. The *Roeh* case should, however, be read in the light of the more recent case of *Ellis v. Interstate B. M. A. Assn.*, 183 Iowa 1279.

For a statement of the general basic principle, the language of the distinguished jurist Chief Justice Shaw, of Massachusetts, may well be read. He says:

"The time within which money shall be paid, land conveyed, a debt released, and the like, are all matters of contract, and depend on the will and act of the parties; but, in case of breach, the tribunal before whom a remedy is to be sought, the means and processes by which it is to be conducted, affect the remedy, and are created and regulated by law. * * * But the remedy does not depend on contract, but upon law, * * * which regulates the construction and effect of the contract.

"Suppose," says he, "it were stipulated in an ordinary contract that, in case of breach, no action shall be brought; or that the party in default shall be liable in equity only, and not at law, or the reverse; that in any suit to be commenced, no property shall be attached * * *; that, when sued on the contract, the defendant will not plead the statute of limitations, or a discharge in insolvency; and many others might be enumerated,—is it not obvious that, although in a certain sense these are rights or privileges which the party, in the proper time and place, may give or waive, yet a compliance with them cannot be annexed to the contract, cannot be taken notice of and enforced by the court or tribunal before which the remedy is sought, and cannot, therefore, be relied on by way of defense to the suit brought on the breach of such contract?"   *Nute v. Hamilton Mut. Ins. Co.*, 6 Gray (Mass.) 180.

We have held that a provision in a contract with a resident of this state requiring all actions thereon against a foreign corporation to be brought in the state of the company's incorporation is void. *Field v. Eastern B. & L. Assn.*, 117 Iowa 185. A stipulation in an insurance contract that any action thereon shall

be tried before a referee is void. *Sanford v. Commercial T. M. A. Assn.,* 147 N. Y. 326, affirming 86 Hun (N. Y.) 380. A provision that any suit upon the policy shall be brought in the Federal court is void. *Mutual R. F. L. Assn. v. Cleveland Woolen Mills,* 82 Fed. 508 (27 C. C. A. 212); *Doyle v. Continental Ins. Co.,* 94 U. S. 535; *Buel v. Baltimore & O. S. W. R. Co.,* 24 Misc. Rep. 646 (53 N. Y. Supp. 749). An agreement in the contract that the party who breaks it will not be sued is void. *Knorr v. Bates,* 14 Misc. Rep. 501 (35 N. Y. Supp. 1060). A provision in an insurance policy that the claims of the insured must be submitted to certain officers of the company, whose decisions thereon shall be final, is void. *Zaremba v. International Harv. Corpn.,* 162 Wis. 231 (155 N. W. 114); *Fox v. Masons' Frat. Acc. Assn.,* 96 Wis. 390 (71 N. W. 363); *Supreme Council v. Grove,* 176 Ind. 356 (96 N. E. 159). That there can be no valid agreement in advance whereby the authority of the court to hear and try an action in accordance with law is limited or controlled, see *Baltimore & O. R. Co. v. Stankard,* 56 Ohio 224. In the last cited case, the court says:

"A long line of decisions hold that parties cannot by contract take away the jurisdiction of the courts in such cases, and that the attempt to do so is void. * * * While courts usually base their decisions upon the ground that parties cannot, by contract, in advance oust the courts of their jurisdiction of actions, a more satisfactory ground is that, under our Constitution, all courts are open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law. Courts are created by virtue of the Constitution, and inhere in our body politic as a necessary part of our system of government; and it is not competent for anyone, by contract or otherwise, to deprive himself of their protection. The right to appeal to the courts for the redress of wrongs is one of those rights which is, in its nature under our Constitution, inalienable, and cannot be thrown off or bargained away."

An agreement between a fidelity insurance company and one who vouches for the honesty of the person whose fidelity is insured, that a voucher showing payment by such company to the employer for loss sustained by the default of the employee

shall be conclusive evidence as to the fact and extent of his liability to the company, has been held subject to the same rule. *Fidelity & Cas. Co. v. Crays,* 76 Minn. 450 (79 N. W. 531) ; *Fidelity & Cas. Co. v. Eickhoff,* 63 Minn. 170 (65 N. W. 351). An agreement in a contract of employment that the employee shall be conclusively bound by a certificate to be thereafter made by his employer is not sufficient to bar evidence upon the truth of the matter so certified. *White v. Middlesex R. Co.,* 135 Mass. 216. A provision in a lease that, in any future legal proceeding between the parties, the lease shall be inadmissible in evidence, is void. *Trustees of L. & W. Orphan House v. Hoyle,* 79 Misc. Rep. 301 (139 N. Y. Supp. 1098). A provision in a life insurance policy requiring "direct and positive proof" of death of the insured does not deprive the plaintiff, in making her proof, of the benefit of all the rules of law established for the guidance of courts and juries in the determination of facts in dispute. *Travelers' Ins. Co. v. McConkey,* 127 U. S. 661. To the same effect is *Utter v. Travelers' Ins. Co.,* 65 Mich. 545, where the court says:

"Courts will not permit the course of justice * * * to be stipulated or contracted in such manner as to defeat the ends to be subserved by such trials."

See, also, *Travelers' Ins. Co. v. Sheppard,* 85 Ga. 751. To the same point, we note *Hannon v. Grand Lodge A. O. U. W.,* 99 Kan. 734 (163 Pac. 169, 170), where the insurance company was depending on a by-law of this character. The trial court there had directed the jury as follows:

"This by-law, as far as it controls or governs the action of the A. O. U. W. in determining whether a member is dead, would be binding; but you are instructed that no by-law of the association can control or prevent the courts and juries from applying the usual rules of evidence in the trial of cases coming properly before them; and in arriving at a verdict you are not bound thereby, and may disregard the same."

On appeal, the instruction was approved, and the judgment for plaintiff affirmed.

We desist from further citation of authorities, already

perhaps, too greatly prolonged; though many others, either directly in point or quite analogous in principle, are available.

The contention by appellant that to sustain a by-law of this nature does not operate to oust the court of its jurisdiction, and that the objection so stated is groundless, is correct; for in the strict sense of the word the court retains its jurisdiction, and there is no such ouster in fact. Technically, this is true; for the court still retains jurisdiction of the case, with authority to preside at the trial and to enter judgment therein. But the error in the phrase is simply in the choice of words to express a thought which is not at all obscure or uncertain. It is not meant thereby that such a right exercised by litigant parties ousts the court of its authority or power to hear the case and render judgment thereon, but it does mean that the jurisdiction is thereby so limited and circumscribed as to take from the court its authority to conduct the trial and control the introduction of evidence in accordance with the settled rules of law. The right so claimed by the appellant, once established, reduces the court to a mere judicial lay figure, upon which interested and ingenious parties may hang their devices for escaping application of the legally established tests of truth.

III. The effect of the decisions in Michigan, Texas, and some other states, as, for example, *Fraternal Mystic Circle v. Hoskins,* Tex. Civ. App. (171 S. W. 812), and *Samberg v. Knights of the Modern Maccabees,* 158 Mich. 568 (123 N. W. 25), is sought to be avoided by pointing out the statutes of those states; and yet, in the same argument, we are told that:

"A rule enacted by statute has no different status from a rule declared by judicial common law. What contract can do to replace the one, it can equally do to replace the other."

It must be admitted that this is true, if it is once conceded that the rights exist at all, in either case. If this be true, and it be further true, as we are further told, upon the same authority, that, "as a contract right is entirely and licitly the creature of the parties' choice, then the remedy desired for that right can and should equally be left to their choice," then there is absolutely no provision of the statute, no rule or principle of common law, devised for the protection of contract rights or to

afford a legal remedy for violations of contracts, which may not be entirely wiped out, and the court rendered powerless to exercise its ordinary functions, by some ingeniously framed provision found in the original writing. The party may thus deprive himself of his right of homestead; of his exemptions from execution; of his right to plead the statute of limitations; of his right to object to incompetent testimony; and of his right to introduce competent testimony. In short, he may thus be wholly denied the right to have his case heard and his rights determined in due course of law, the guaranty of which is embodied in the judicial system supposed to be organized to insure equal and exact justice between man and man. We are not disposed to hold that this may be done. As far back as the Ordinance of 1787, the people were guaranteed "judicial proceedings according to the course of the common law." That guaranty has been perpetuated in one form or another in every expression of sovereign authority of the state down to the present time; and surely it is not only loyal obedience to the ultimate authority, but wise public policy, for the courts to resist every tendency to disregard it. To repeat the phrase already quoted from the Ohio court, our remedial system of laws "inheres in our body politic as a necessary part of our system of government; and it is not competent for anyone, by contract or otherwise, to deprive himself of their protection. The right to appeal to the courts for the redress of wrongs is one of those rights which is, in its nature under our Constitution, inalienable, and cannot be thrown off or bargained away." For the reasons stated, the by-law in question is void. We discover no reversible error in the record.

IV. Much is said of the right of contract and the right of a party to have his contract enforced according to its letter, even though it may be unreasonable. Within certain limitations, this may be conceded; but the domain of the right of contract stops short of the control of the functions of the courts which the state has provided to construe the contract and adjudicate controversies arising thereunder. The judgment of the district court is—*Affirmed.*

STEVENS, C. J., PRESTON, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.

EVANS, J., dissents.

EVANS, J. (dissenting).—I am not able to concur. This is not a case where plaintiff sought to prove the death of the insured by circumstantial evidence. She predicated her case upon the *presumption* of death arising out of his seven years' absence, unheard of. The court below instructed that such presumption obtained in this case. Error is assigned on such instruction. To say that evidence of long continued absence was *admissible,* notwithstanding the proviso in the policy, does not meet the assignment of error. The instruction was that it was *sufficient "evidence of death,"* though the policy provided that it "shall not be regarded as evidence of death." The defendant had a right to limit the scope of the insurance sold by it, and the moral hazard thereof, by excluding from its benefits cases of mere "disappearance" and continued absence. The policy is fairly capable of a construction to just such effect. Why should it be construed in a way to render it illegitimate and nugatory?