HATTIE E. LUNT, Appellee, v. GRAND LODGE ANCIENT ORDER UNITED WORKMEN OF IOWA, Appellant.

No. 39490.

NOVEMBER 21, 1929.

REHEARING DENIED MARCH 12, 1930.

*Milchrist, Schmidt, Marshall & Jepson,* for appellant.

*Crary & Crary,* for appellee.

EVANS, J.—The certificate sued on contains the following proviso:

"I agree that my disappearance or long continued absence, unheard of from my family or place of residence, shall not be regarded as evidence of my death, or of any right to recover under my certificate, until after the expiration of my expectancy of life, according to the mortality tables of the National Fraternal Congress."

The foregoing provision was supported by an existing by-law to the same effect. The fighting question in this case is whether the foregoing provision was valid and binding upon the insured and his beneficiary.

The effect of seven-year disappearance upon the rights of the insured and his beneficiary has been considered in a series of our cases, as follows: *Olson v. Modern Woodmen,* 182 Iowa 1018; *Richey v. Sovereign Camp of W. O. W.,* 184 Iowa 10; *Haines v. Modern Woodmen,* 189 Iowa 651; *Fryer v. Modern*

*Woodmen* (Iowa), 179 N. W. 160 (not officially reported) ; *Fleming v.Merchants' Life Ins. Co.*, 193 Iowa 1164.

In the four cited cases of *Olson, Richey, Haines,* and *Fryer,* by-laws were involved which repudiated the presumption of death from the fact of disappearance and a seven-year absence.  In each case, such by-law was not in existence at the time of the issuance of the policy, but was enacted thereafter. In each case, the policy issued purported to bind the policyholder to future by-laws. In each case we held that the enactment of such future by-laws was not a reasonable exercise of the power conferred by the terms of the policy, in that it operated to reduce materially the scope of insurance otherwise contracted for. Such is not the question involved in the case at bar. The present by-law was not only in existence at the time the insured became a member, but its provision was incorporated in the certificate itself. It is a part of the instrument upon which plaintiff predicates her action.

However, in the *Fleming* case, 193 Iowa 1164, the by-law relied on in defense was in existence as a previous enactment, and was incorporated in the policy sued on. To that extent, the *Fleming* case involved the conditions present herein. The distinction between the facts of the *Fleming* case and those of the case at bar is that in the former the by-law purported to cut off from the insured all remedy in a disappearance case and all right of recovery at any time ; whereas, in the case at bar, the right of remedy and recovery was postponed until the expiration of the period of the expectancy of the insured. The effect of such provision in this policy is to retard the maturity of the cause of action upon the policy until July 1, 1941, unless there be evidence of death other than disappearance and continued absence.

In our judgment the distinction is a very material one, and warrants differentiation in the legal effect of the respective policies. Notwithstanding this fact, it is contended that our holding in the *Fleming* case was effective, nevertheless, to foreclose such differentiation now. Whether we are thus foreclosed by the *Fleming* case is the first difficulty now confronting us. If nay, we could readily agree that the provision of policy and by-law

now under consideration is a valid one, and is, therefore, enforcible according to its terms.

In the *Fleming* case, one ground of condemnation of the proviso under consideration herein is that it is an attempt to abrogate a rule of evidence, and is, therefore, an infringement  upon the functions of the court in future litigations upon the contract. This ground of condemnation, if valid, is applicable to the case at bar. To follow this ground of condemnation, however, involves us in another conflict of precedents. It is in conflict with our previous holding in *Roeh v. Business Men's Prot. Assn.*, 164 Iowa 199. In that case we had under consideration the question whether contractual provisions relating to future procedure were contrary to public policy, and therefore void. We held definitely in the negative. In that case we said:

"It is contended that the by-law is contrary to public policy, in that it attempts to modify and control the procedure of courts of justice. It does not in any manner deprive courts of their jurisdiction, but simply provides a rule of evidence or a condition precedent or subsequent to a right of recovery. We see nothing in the by-law contrary to public policy. Contracts relating to procedure have frequently been sustained. The parties may, by contract, fix their own statute of limitations. See *Harrison v. Insurance Co.*, 102 Iowa 112. They may also specify the terms and conditions of liability, even though, without the contract, recovery might be had. *Griswold v. Railroad*, 90 Iowa 265. A contract may be made, waiving a jury trial. *Columbia Bank v. Okely*, 4 Wheat. 235 (4 L. Ed. 559). A by-law much like the one now before us was applied in *National Ass'n v. Ralstin*, 101 Ill. App. 192; *Kelly v. Supreme Council*, 46 App. Div. 79 (61 N. Y. Supp. 394). A contract providing a rule of evidence was also upheld by this court in *Russ v. The War Eagle*, 14 Iowa 363. The legislature has not spoken upon this subject, and, until it does so, we see nothing inimical to public policy in the by-law now before us."

Our foregoing pronouncement has been consistently followed by us ever since, in the "eyewitness" cases. See *Pride v. Inter-State Bus. Men's Acc. Assn.*, 207 Iowa 167. We are confronted

with the necessity of overruling the *Roeh* case or of overruling the third ground of the *Fleming* case. It is our present judgment that the *Roeh* case presents the sounder view on that question. It has the support of the overwhelming weight of authority in other jurisdictions.

In so far, therefore, as the *Fleming* case holds that the policy provision therein under consideration was void as an interference with court procedure, it is now overruled.

The only other ground urged against the validity of the policy provision is that it is unreasonable. Some courts have so held. In our judgment, the weight of authority is clearly to the contrary. On principle, we see little ground for such holding. To permit a life policy to be constructively matured by the mere disappearance of the insured clearly introduces into the risk a moral hazard. It creates a motive to disappearance. Insurance companies must take account of moral hazards, and it is their natural duty to make reasonable provision against them. A life insurance policy does not ordinarily mature within seven years. The policy proviso under consideration gives to the insured the benefit of his presumptive expectancy, even in case of disappearance. It thereby removes from him the motive to accelerate maturity by disappearance. It works no fraud upon him, when it is made known to him by the terms of his policy. It exacts nothing more from him than the actual cost of his insurance. By means of a medical examination, the insurance company assures itself of the character of the risk it assumes and of the fact that the physical condition of the insured is such as to warrant a normal expectancy of life. Without such medical examination, no insurance company could safely issue policies. Nor would the public authorities permit its transaction of business without such safeguard. But a medical examination is worthless against the prospective or possible disappearance. Assurance against constructive death by disappearance must be had, if at all, by other means. Such is the function of the policy provision under consideration. The net effect of the provision in the case at bar is that the medical examination of the insured disclosed a physical state indicating an expectancy of 25 years. The insured and the insurer bargained upon the basis of this expectancy, in lieu of any rule to the contrary. Why such a provision should be

deemed unreasonable, or void, as against public policy, is not apparent to us. We hold the same to be valid.

The judgment below is, accordingly,—*Reversed.*

All the justices concur.