Plaintiff alleged that the defendant herein is indebted unto it in the sum of $1,500, with 5% per annum interest thereon from June 22, 1933, until paid, together with $500 additional as attorney's fees. It alleged that on and prior to the above alleged date, defendant was employed in the capacity of president and general manager of the Fell Coffee Company, Incorporated, at Alexandria, Louisiana; that petitioner was bondsman on a fidelity bond which indemnified the said Coffee Company against any pecuniary loss which was brought about through any acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation or misapplication of funds committed by defendant during his employment with the said Coffee Company; and that said defendant signed the application for bond in which he agreed to indemnify and save harmless petitioner from any loss, damage, fees or expense which it might sustain or incur by reason of said bond. It attached the application and bond to its petition.
Plaintiff further alleged that on June 22, 1933, it paid the said Coffee Company $1,500, under the terms and conditions of the bond for shortage in the account of said defendant; and that payment was made after claim was presented by said Coffee Company and after it appeared that liability existed under said bond and after proof of loss was made by the Coffee Company.
Plaintiff further alleged that it was necessary to employ attorneys to collect from defendant the amount due it by him and that a reasonable attorney's fee in the premises is $500.
Defendant filed a plea of prescription of one year, which was tried and overruled by the lower court. He then answered denying that he was indebted unto plaintiff in any amount. Further answering, he averred:
"11. Further answering, respondent shows that the Fell Coffee Company is a Louisiana corporation, in which all of its capital stock was owned by A. Legendre, Leo Zander and E.P. Bartlett, of New Orleans, Louisiana, with the exception of one share which was owned by your respondent, and consequently the said parties, with your respondent, constituted all of the stockholders of said corporation.
"12. That your respondent was president and general manager of said corporation up until November, 1932, at which time he severed all connection with said corporation and surrendered his one share of stock to the said Legendre, Zander and Bartlett, respondent severing all connection with said corporation because of physical ill health of respondent, and that thereafter he had no connection with said corporation in any shape, form or fashion.
"13. That prior to June, 1932, respondent overdrew his salary account from said Fell Coffee Company, Inc., in the sum of $4031.50, of which amount $2000 was drawn with the knowledge and consent of the said Legendre, Zander and Bartlett, constituting all of the stockholders of said corporation, with respondent, and the balance of $2031.50 was drawn without their knowledge.
"14. That in June, 1932, the total amount of the overdraft of respondent became known to the Fell Coffee Company, Inc., and its said stockholders, Legendre, Zander and Bartlett, at which time a discussion of the matter took place between the said Legendre, Zander and Bartlett and respondent, and it was agreed between them, acting as the sole stockholders of the Fell Coffee Company, Inc., and respondent that said amount of overdraft and withdrawals would be settled by respondent giving unto the said stockholders, acting on behalf of said corporation, his demand note for the sum of $4031.50, in full and complete settlement of said withdrawals and overdrafts, and accordingly, on June 20, 1932, respondent executed *Page 521 
and delivered his said note, dated June 20, 1932, in the sum of $4031.50, due on demand, and bearing 6% per annum interest from its date, made payable to Leo Zander, Earl Bartlett and Armand Legendre.
"15. That said note was accepted by the said Legendre, Zander and Bartlett, acting as stockholders of the said Fell Coffee Company, and on behalf of said corporation, from your respondent in full, final and complete settlement of all claims that Fell Coffee Company or they, as stockholders thereof, had against respondent because of said withdrawals and overdrafts of respondent.
"16. That thereafter respondent made payments on the principal of said note, having paid $50.00 thereon on July 14, 1932, and $31.50 on November 17, 1932, which payments were accepted by the payees of said note on behalf of the Fell Coffee Company, and credited upon said note.
"17. That the said claim of Fell Coffee Company against respondent was completely settled, novated and discharged on June 20, 1932, by the giving of said note heretofore mentioned herein, and which was accepted by the said Coffee Company, acting through its entire stockholders and each and every one of them and accepted said note as a complete and final discharge of all liabilities of respondent to the Fell Coffee Company, Inc.
"18. That consequently, when the said Fell Coffee Company, acting through its stockholders hereinabove named, obtained any money from the plaintiff herein, if any was obtained, which is denied, it did so fraudulently and with full knowledge that all claims that the Fell Coffee Company had against respondent had been settled, novated and discharged, and that the said Coffee Company and its stockholders had no claim against plaintiff herein under the bond executed by it, and consequently said plaintiff if it paid any money to the said Fell Coffee Company or its stockholders, paid the same without any legal obligation on its part to do so and cannot hold respondent liable therefor.
"19. That the said plaintiff herein, when it paid said money to the Coffee Company or its stockholders, did so, if such a payment was made, which is denied, without any investigation of the facts and without determining that respondent was under no liability whatsoever to the said Coffee Company for the reasons and causes hereinabove set forth, and negligently and carelessly paid the same, if such was paid, and therefore is estopped to prosecute this suit against respondent, which estoppel is hereby specially pleaded.
"20. That if the said plaintiff herein paid any money to the said Fell Coffee Company, because of any act of respondent, which is denied, then and in that event respondent shows that it was under no legal obligation to do so when this respondent had already settled, novated and compromised all claims of the said Coffee Company against him and consequently has no cause of action against your respondent for any monies it might have paid to the said Coffee Company.
"21. Further answering, respondent shows that on April 5, 1935, he filed his petition in bankruptcy in the United States District Court for the Western District of Louisiana, which proceeding bore the number 5469 on the docket of said court, and your respondent, under said petition of bankruptcy, was adjudicated a bankrupt on April 5, 1935.
"22. That in said petition of bankruptcy respondent listed as one of his debts the said note payable to the said Bartlett, Zanders, and Legendre, hereinabove referred to, and was discharged from any obligation thereon by his discharge in bankruptcy rendered February 28, 1936.
"23. That at the time respondent filed his petition in bankruptcy and during the time between the filing thereof and his discharge, the plaintiff herein had full knowledge of the filing of said bankruptcy petition through its officers, agents and attorneys and under the law is bound thereby, and for this additional reason respondent is not liable to plaintiff herein, which petition and discharge in bankruptcy is pleaded herein, by respondent in the alternative.
"24. Respondent further shows that he had no knowledge whatsoever of Fell Coffee Company or its stockholders making claim against said bonding company, plaintiff herein, or collected any monies from it until long after such was done, if it was done, and only learned thereof after such had taken place.
"Wherefore respondent prays that this answer be deemed sufficient and that plaintiff's demand be rejected at its cost." *Page 522 
The only witness to testify in the case was the defendant. Plaintiff called him for cross-examination and he admitted signing the application for bond and that it was issued in accordance with the application; that he was in the employ of the Fell Coffee Company, Inc., from 1928 to November, 1932; that during the year 1932, his salary account was overdrawn to the amount of $4,031.50; and that his employers had knowledge of approximately $2,000 of this amount.
Plaintiff offered in evidence the application for bond, the bond, the proof of loss made to the bonding company and the cancelled voucher or check for $1,500, which was paid by plaintiff to the Coffee Company in full settlement of the shortage claim. Defendant admitted this amount was paid by plaintiff to his employer as a result of his overdraft of his salary account.
When defendant testified in his own behalf plaintiff objected to any testimony on the ground that defendant in answer had denied his signature to the application for bond and on cross-examination had admitted his signature and that he was therefore deprived of any other defense. The lower court overruled the objection. The same objection is strenuously urged here. The lower court has correctly ruled on the objection and in its written opinion has correctly set forth the law applicable to the ruling. Since we will quote this opinion later, we will not rediscuss the question.
Defendant testified that the overdraft became known to the Coffee Company officials in June, 1932; that he went to New Orleans and had a meeting with all of the stockholders of the corporation, which were three in number, and it was agreed that he give them a demand note bearing 6% interest to cover the overdraft. That he returned to Alexandria and prepared such a note, dated June 20, 1932, for the sum of $4,031.50, and mailed it to the stockholders; and that they agreed to accept the note in full settlement of the overdraft. That he afterwards made two payments on the note, one for $50 in July, 1932, and one for $31.50 in November, 1932. Defendant continued in the employ of the Coffee Company, but without authority to give checks, until the latter part of 1932 when, he testified, he was ordered by his physicians to cease any and all kinds of work. He testified that he had no knowledge that any demand was made on the bonding company or that it had paid any money to the Coffee Company under the bond until August, 1933; and that he was never contacted by the bonding company until after it had paid the $1,500 to the Coffee Company.
Defendant further testified that in April, 1935, he filed a petition in bankruptcy and listed the note he had given to cover the shortage and that he had been discharged by the Bankruptcy Court. He did not list the claim of petitioner for the reason, he contended, he did not owe it anything. Defendant is of the opinion that an attorney in Alexandria, representing petitioner herein, knew of his bankruptcy proceedings. His testimony on this point is neither definite nor certain. There is no other evidence in the case.
The lower court awarded judgment for plaintiff and rendered the following opinion:
"Defendant, J.J. Fell, in 1929, made application to the Standard Accident Insurance Company, plaintiff herein, to indemnify his employer, Fell Coffee Company, Inc., of Alexandria, Louisiana, against loss from his acts as president and general manager of said company. The bond was duly executed on June 4, 1929.
"On June 22, 1933, the bondsman paid to the Fell Coffee Company $1,500 to cover a default of Fell. It brings this suit to recover that amount, with legal interest, and $500 as attorney's fees.
"Defendant sets out that the default represents an overdraft of his salary account prior to June, 1932, of $2,000 with the knowledge of his associates, and $2,031.50 without, the whole amount being known to his associates in said month of June. That after a conference, Fell, on June 20, 1932, gave his note in the sum of $4031.50 in full and complete settlement of said overdraft. That payments of $81.50 were made upon said note. That this constituted a novation of the overdraft. That the original obligation being discharged, the coffee company had no right to exact payment from the bondsman. That the bondsman not being liable to the coffee company and making the payment without investigation or notice, cannot exact reimbursement from him. *Page 523 
"Further answering, defendant sets up a discharge in bankruptcy of date February 28, 1936. That the note alone was listed in said proceeding, but that the bondsman had full knowledge through its agent of all the bankruptcy proceedings.
"Upon trial of the case, defendant called on cross-examination, admitted the overdraft, the payment by the bonding company and his signature to the application and agreement for bond, whereupon plaintiff rested.
"When defendant offered evidence plaintiff objected on the ground that defendant, having in his answer denied his signature to the application and agreement, was cut off from all other defenses. The evidence was admitted subject to the objection, which is now urged in argument and brief.
"The denial relied upon is two-fold: First, in the usual preamble, general denial of everything not admitted, and second, the denial of Article 8, which reads `Article 6 of plaintiff's petition is denied as written.'
"Article 6 of the petition contains the allegation that defendant signed the application and the further allegation of plaintiff's summary of the contents and effect of the agreement. A mere denial of a signature would not be qualified by the words `as written', which plainly apply to the other allegations in the article.
"Article 326 of the Code of Practice does provide that:
"`The defendant, whose signature shall have been proved after his having denied the same, shall be barred from every other defense.'
"But the rigors of this article have been softened by the repeated decisions of the courts that the denial must be express and special to bar other defenses, a general denial not sufficing. Cox v. Cox, 193 La. 268, 190 So. 401.
"Manifestly the denials in this case do not meet these requirements and do not justify the exclusion of the testimony.
"The next defense is that of novation. The only witness supporting it is Fell himself. He testifies that about June, 1932, after the discovery of the overdraft, he had a conference in New Orleans with all the stockholders, at which it was agreed that the shortage was to be settled by his giving his demand note in settlement of the account. The note was executed in the amount of $4031.50 and two payments totaling some $80.00 were made on it.
"The coffee company made demand on the bondsman after this note was given. Plaintiff paid it on June 22, 1933, by check for $1500 without notice to Fell, who did not hear of it until August, 1933. Is this unsupported testimony sufficient to prove novation?
"Novation is not presumed; the intention to make it must clearly result from the terms of the agreement. Civil Code, art. 2190 and cases cited.
"`Without an express declaration to that effect by the creditor, or acts tantamount to such a declaration, it can never be held that an original debtor is released. This rule is well settled, and is always adhered to in questions occurring in the changing of debts. Courts are bound to weigh with exactness all the attending circumstances of transactions of this kind, in order to ascertain whether the parties have really intended to make a novation of their debts.' Short v. City of New Orleans, 4 La.Ann. 281.
"Examining the circumstances, we consider it entirely unreasonable to believe that business men would exchange a debt secured by an iron clad bond for the unsecured note of a man who had just been found short $4031.50 in his accounts. The idea of novation is absolutely contradicted by the action of the creditors in making demand upon the bondsman. In the light of these facts and of the high degree of proof required, we do not accept the unsupported statement of the highly interested debtor that novation was intended. It is well settled that the mere giving of a note for a preexisting debt does not work a novation thereof. It might be argued as a mark of confidence that his employment was continued. This is destroyed by the fact that he could only issue checks countersigned by another official.
"But defendant has another string to his bow. After admitting the shortage, giving the note and paying $81.50 on it, and after the bonding company had made payments, he went into bankruptcy, listing the note but not the original indebtedness. A discharge in bankruptcy only releases scheduled debts or those wherein the creditors had actual knowledge of the bankruptcy proceedings in time to file his claim. Again, unsupported by other *Page 524 
proof, defendant testifies that Mr. Arial White, of Alexandria, was well known to him and that he saw him several times a week. That White represented the Standard Accident Insurance Company on the claim and knew of the bankruptcy.
"Q. He knew you were in bankruptcy? A. Yes.
"Q. At that time he was representing the Standard Accident Insurance Company on this claim? A. I am quite sure he was.
"It seems to us that, considering the position of the witness in this case, the relationship testified to is so casual and the final answer so lacking in positiveness or statement of fact that standing alone, we cannot accept it as proof of actual notice. Furthermore, granting that there was knowledge, it is not shown that it was received in time to file a claim.
"The application and agreement for bond contain the following stipulation:
"`The undersigned also hereby agrees that the vouchers or other proper evidence showing payment by the company of any claim, demand, loss, damage, fees, or expenses, in connection with any such indemnity in his behalf shall be conclusive evidence of the fact and amount of liability in that respect of the undersigned to the company, provided that such payment shall have been made by the company in good faith, believing it was liable therefor.'
"While such a provision would not be permitted to work a fraud on the debtor, it is not unreasonable, as the bondsman, after paying off a shortage or defalcation would be in a hard position if the claim was contestable by the party bonded. It has been held, as shown by the cases cited in plaintiff's brief. Considering that the bonding company is at the mercy of the bonded, it is justified in strict measures for its protection.
"The present case discloses no hardship or fraud on the defendant. Plaintiff paid out $1500 on his admitted shortage. There was at least no novation between plaintiff and defendant. Defendant was fully aware of the obligation of his bondsman, yet gave no notice of the purported novation with his employer. He is seeking to escape an indebtedness of about $4000.00, upon which he had paid about $80.00. We fail to see where he can claim any equitable defenses.
"For the above reasons there is judgment for plaintiff in the amount claimed, with attorney's fees fixed at $250.00."
Defendant is prosecuting this appeal and is again urging his plea of prescription of one year. He correctly contends that the misappropriation of funds by defendant was an offense or quasi offense and that an action by the Coffee Company to recover against defendant was prescribed in one year, but the suit before us is an action on a written contract entered into between plaintiff and defendant in which defendant bound himself to repay to plaintiff any funds paid out by it under a contract (bond) issued by plaintiff to the Coffee Company on the application of the defendant herein. This is clearly a suit on a contract and is not prescribed in one year.
The lower court was correct in overruling the plea of prescription.
The lower court has also correctly decided the defense of bankruptcy urged by defendant.
We seriously doubt the finding of the lower court on the defense of novation urged by defendant, but we deem it unnecessary to determine this issue for we are of the opinion it cannot be used as a defense to this suit under the contract entered into by defendant with plaintiff.
The application signed by defendant contains the following binding clause:
"The undersigned also hereby agree that the vouchers or any other proper evidence showing payment by the company of any claim, demand, loss, damage, fees, or expenses, in connection with any such indemnity in his behalf shall be conclusive evidence of the fact and amount of liability in that respect of the undersigned to the company, provided that such payment shall have been made by the company in good faith believing it was liable therefor."
This court has passed on a provision somewhat similar and found it binding on the parties to the contract in the case of Fidelity Deposit Co. v. Max Thieme, La.App., 193 So. 496. There are a line of decisions from other jurisdictions which have held similar provisions void as being against public policy in that they superseded the functions and duties of the court. See the following cases: Fidelity Casualty Co. of New York v. *Page 525 
Crays, 76 Minn. 450, 79 N.W. 531; Fidelity Deposit Co. of Maryland v. Nordmarken, 32 N.D. 19, 155 N.W. 669; Guaranty Company of North America v. Charles, 92 S.C. 282, 75 S.E. 387; Fidelity Casualty Co. v. Eickhoff, 63 Minn. 170, 65 N.W. 351, 30 L.R.A. 586, 56 Am.St.Rep. 464.
However, in all these cases, with the exception of one, the provisions fail to contain the exception when fraud was committed and do not stipulate that payment must be made in good faith. The majority rule, however, is to the contrary and many times have courts of other jurisdictions held that such a clause as the one with which we are now dealing was not void, as being against public policy, but was a valid and binding clause in the contract between the parties. See the following cases: Illinois Surety Company v. Maguire, 157 Wis. 49, 145 N.W. 768; Guarantee Company of North America v. Pitts, 78 Miss. 837, 30 So. 758; United States Fidelity Guaranty Co. v. Baker, 136 Ark. 227, 206 S.W. 314; Fidelity Casualty Co. of New York v. Harrison, Tex.Civ.App., 274 S.W. 1002; John A. Tollman Company v. Bowerman,5 S.D. 197, 58 N.W. 568; W.T. Rawleigh Company v. Deavours et al., 209 Ala. 127, 95 So. 459; American Bonding Company of Baltimore v. Alcatraz Construction Company, 2 Cir., 202 F. 483; National Surety Company v. Fulton, 192 App. Div. 645, 183 N.Y.S. 237, 238.
In the last cited case the Court, after referring to the two lines of decisions, said:
"In Fidelity Deposit Company of Maryland v. Nordmarken, supra, the agreement did not provide for any exception in the case of fraud, which would be a sufficient ground for differentiating that decision from the others. In Fidelity 
Casualty Co. v. Eickhoff, supra, the case arose on an appeal from an order sustaining a demurrer to the complaint, and the question of the validity of the clause was not involved in the appeal.
"The reasoning of the cases in which such `conclusive evidence' provisions were held to be void seems to be that it is contrary to public policy to permit the bonding party to be the sole judge of the rightfulness of his cause of action, and thus oust the courts of their jurisdiction. On the other hand, in Guarantee Company v. Pitts, supra, the court states that —
"`The expense, delay, trouble and risk of loss to the guaranty company is a sufficient safeguard against an unwarranted payment, and without such a stipulation as complained of here guaranty companies could not safely do business anything like as cheaply as they do, and to the evident advantage of the parties and of the general public.'
"It should be noted that most of the cases upholding the validity of such a clause do so only where the payment by the indemnity company has been made in good faith, and hold that it would not be valid to protect it against its own fraud.
"In the instant case the agreement contains the phrase, `Provided, That such payment shall have been made by the company in good faith believing it was liable therefor,' thus bringing it within the rule laid down in the group of cases just referred to. On principle, there would seem to be no reason why such agreements should not be enforced in view of the peculiar nature of the obligation assumed by the bonding company. In Frost on Guaranty Insurance (2d Ed.) p. 737, it is said:
"`Such stipulations as the one under consideration should be held to be conclusive upon the "risk" in an action brought against him by the insurer to recover indemnity for any moneys paid by it to the insured in settlement of a loss coming within the terms of a policy of guaranty insurance, in the absence of fraud or collusion between the insurer and the insured. It is unconscionable, in our opinion, that the insurer, after settling in good faith a loss under the policy with the insured, should be compelled to bear the burden of protracted litigation with the "risk," in order to recover reimbursement for moneys so expended for the use and benefit of such "risk."'"
In Fidelity Casualty Co. of New York v. Harrison, supra [174 S.W. 1004], the Court had the following to say:
"In the case of Guarantee Company of N.A. v. Pitts, cited above, the Supreme Court of Mississippi used the following language:
"`There is nothing wrong or unreasonable, or against public policy, in this stipulation. Parties sui juris may lawfully make such stipulations, and are bound by them. Under such contract the company was authorized in advance, as a condition of guaranteeing, to exercise discretion *Page 526 
as to paying any demand made by the holder of the guarantee, and was bound only to act without fraud in settling a claim, and, thus paying, is entitled to hold the party guaranteed for reimbursement; and the voucher proves the claim, if not shown to have been infected with fraud. The expense, delay, trouble, and risk of loss to the guarantee company is a sufficient safeguard against an unwarranted payment; and, without such a stipulation as complained of here, guarantee companies could not safely do business anything like as cheaply as they do, and to the evident advantage of the parties and of the general public.'
"The other decisions last cited are substantially to the same effect and upon the same reasoning, all of them, however, qualifying the holding with the statement that the action of the surety company in making the payment must be in good faith and free of fraud. We adopt the conclusion so reached in those decisions, because we believe the same is sound, and it is directly applicable to this case. In his pleadings, the appellee did not tender the issue of fraud or want of good faith on the part of the express company in paying the checks, or on the part of the indemnity company in reimbursing the express company for the amount so paid by the latter, and no evidence was offered tending to sustain any such contention if it had been made. Hence, the presumption must be indulged that the express company paid the checks in good faith and that the indemnity company reimbursed the express company for such payments in good faith, and without any fraudulent collusion with that company or with any one else."
The reasoning in these two cases is sound.
Defendant has not charged any fraud or lack of good faith either in his pleadings or testimony, to plaintiff. His sole charge against plaintiff is that it carelessly and negligently paid money to his employer which it should not have paid. Fraud or lack of good faith is never presumed; it must be proven.
We are of the opinion that the above quoted clause is binding between plaintiff and defendant and when plaintiff produced the voucher and other evidence which we have above related, it made out a prima facie case and defendant has not attempted to rebut it or overcome it by proof of fraud or lack of good faith, which are the only defenses he could have urged.
The judgment of the lower court is therefore affirmed, with costs.