383 S.E.2d 95

**William Troy ROBINSON**

v.

**FIDELITY & DEPOSIT COMPANY, et al.**

No. 18779.

Supreme Court of Appeals of West Virginia.

July 27, 1989.

---

James Allan Colburn, Baer, Robinson & Colburn, Huntington, for William Troy Robinson.

Robert Levy, Levy & Trautwein, Huntington, for Fidelity and Deposit, Radic, Ferguson.

WORKMAN, Justice:

This case is before the Court on an appeal of William Troy Robinson (Robinson) from the September 10, 1987, order of the Circuit Court of Wayne County which granted a motion for summary judgment in favor of the appellees Fidelity and Deposit Company of Maryland (Fidelity).[1] The appellant's only assignment of error is that the trial court erred in granting the appellee's motion for summary judgment limiting liability to the amount of the penal bond, and not considering that the surety had dealt in bad faith and breached the express provisions of its insurance.[2] We find that the trial court properly granted summary judgment and thereby affirm the decision of the lower court.

This action is ultimately the result of a lawsuit which was filed in United States District Court for the Southern District of West Virginia by Robinson against Leslie Ferguson (Ferguson). Ferguson, a law enforcement officer for the town of Fort Gay, West Virginia, allegedly assaulted Robinson in his home in Fort Gay on December 19, 1984. The appellee in the present case was not a party to the lawsuit in federal court. Fidelity, however, did insure Ferguson, the police officer, by a bond in the amount of three thousand five hundred dollars ($3,500.00) for the well and faithful performance of Ferguson's duties as a law enforcement official.

On August 28, 1986, Fidelity received a letter[3] from the appellant's attorney advising that the appellant had filed a lawsuit against Ferguson, Fidelity's principal, pursuant to the bond, and that trial for the civil action was scheduled for September 30, 1986.[4] Further, in the letter, demand was made upon Fidelity to either immediately pay the penal sum of the bond which had been posted and executed in the amount of three thousand five hundred dollars or demand would be made upon Fidelity to pay any excess of any verdict which might be recovered by the appellant against Ferguson.

By letter dated September 18, 1986, Fidelity advised the appellant's counsel of its receipt of the August 27, 1986 letter. The company indicated in the letter that it would contact its bond principal, Ferguson, obtain his position, and get back in touch with the appellant's counsel. Fidelity also requested appellant's counsel to supply it with specific information and/or his statement of events which gave rise to the civil action. Fidelity was never contacted by its principal, Ferguson, nor did the appellant's counsel ever respond to Fidelity's request for information regarding the civil action.

Prior to trial, Ferguson confessed judgment in the civil action in the amount of five hundred thousand dollars ($500,-000.00).[5] Counsel for the appellant provid-

1. One of the defendants, Roxanne Radie, was dismissed as a party by the lower court in the September 10, 1987 order. This portion of the order was not appealed.

2. The lower court did render judgment in favor of the plaintiff and against the defendant in the amount of three thousand five hundred dollars ($3,500.00), but refused to find the defendants liable for the total amount of the confessed judgment which would have been five hundred thousand dollars ($500,000.00).

3. The facts of this case, including the dates and the contents of the letters referred to above, are not in dispute. None of the letters or pleadings from the underlying lawsuit were included in this appeal.

4. This notification came twenty months after the alleged assault occurred and eighteen months after the civil action had been instituted in federal court. It was the first notification that the appellee had received regarding this civil action or any of the events which gave rise to the action.

5. After confession of judgment, Ferguson assigned his right of action against Fidelity for failure to defend to Robinson, the appellant herein. Further, Fidelity indicated that Ferguson agreed to confess judgment only after the appellant agreed he would not execute or attempt to execute the judgment against Ferguson's property.

ed Fidelity with a copy of the confession of judgment order along with the letter dated October 17, 1986, which demanded that Fidelity pay the sum of $500,000.00 since Fidelity had failed to pay the $3,500.00 when the demand was first made.

On November 7, 1986, Fidelity offered to pay the appellant $3,500.00 which was the penal amount of the bond. On November 12, 1986, the appellant refused the $3,500.00, but indicated that he would accept the sum of one hundred thousand dollars ($100,000.00) as settlement from Fidelity.

Subsequently, the appellant filed suit against Fidelity alleging that the company was liable for the $500,000.00 judgment, plus interest from October 15, 1986, since Fidelity's actions in not paying or offering to pay the sums demanded by the appellant immediately after the demands were made were negligent, in bad faith and breached the express provisions of the insurance contracts. Based on the pleadings in the case, and following a hearing on the matter, motion for summary judgment was granted in favor of Fidelity.

■ The principal issue in this case is whether the appellant can recover, under this official bond, any sum in excess of the stated penal amount, $3,500.00. *W.Va. Code* § 61–7–5 [1969][6] in pertinent part provides that a regularly appointed police officer can carry a weapon as long as the officer has

> given bond in the penalty of not less than three thousand five hundred dollars, conditioned for the faithful performance of their respective duties, which said officers shall be liable upon their said official bonds, for damages done by the unlawful or careless use of any such weapon or weapons, whether such bond is so conditioned or not.

The purpose of enacting the statutory provision was to insure that the public was protected against the unlawful use of a police officer's weapon. *State ex rel. Ashworth v. Bibb*, 114 W.Va. 215, 171 S.E. 414, 415 (1933). Consequently "[w]hen a principal purchases a bond he [she] does not purchase insurance from liability. A bond is issued for the protection of those with whom the principal deals." *State ex rel. Mayle v. Aetna Casualty & Sur. Co.*, 152 W.Va. 683, 166 S.E.2d 133, 136 (1969).

The appellant argues that Fidelity dealt in bad faith and breached the express provisions in its statutory insurance contract with Ferguson when it failed to effectuate a prompt, fair and equitable settlement; failed to respond to or investigate the civil suit between the appellant and Ferguson; and breached the express provisions of the bond. Therefore Fidelity's liability should not have been limited to the penal amount of the bond. The appellee, on the other hand, does not dispute that it is potentially liable for actual damages rather than the penal amount of the bond, since the bond is an insurance contract subject to the unfair insurance claim settlement practice as found in *W.Va.Code* § 33–11–4(9) [1985]. However, Fidelity contends that its liability is limited to the penal amount of the bond because the company has not acted in bad faith, nor breached any express provision found in the bond.

■ The bond involved in this case, while not insurance from liability from the principal's prospective,[7] is an insurance contract according to *W.Va.Code* § 33–1–10(f)(1) [1986]. *Code,* 33–1–10(f)(1) defines surety insurance as "[f]idelity insurance, which is insurance guaranteeing the fidelity of persons holding positions of public or private trust." Since the bond is a contract for insurance under the code provision, it is subject to the unfair claim settlement practice, found under *Code,* 33–11–4(9). Thus, in determining the surety's liability, it is necessary to evaluate its actions to deter-

---

**6.** The provisions formerly found in *Code,* 61–7–5 were amended and are now found in *W.Va. Code* § 61–7–6 [1989]. It is important to note that the new statute no longer requires that a law enforcement officer post a bond.

**7.** This is according to our decision in *Mayle,* 152 W.Va. at 687, 166 S.E.2d at 136.

mine if bad faith was present[8] or if the surety breached an express provision[9] of the bond. For if no bad faith or breach is present in the surety's actions, under the insurance contract, "[i]t is a well settled principle of law that the extent of liability of the surety is limited by the penalty of the bond and is otherwise the same as that of the principal." *Mayle,* 152 W.Va. at 685, 166 S.E.2d at 135; *See Continental Realty Corp. v. Andrew J. Crevolin Co.,* 380 F.Supp. 246, 252 (S.D.W.Va.1974).

■ First, the appellant contended that the appellee breached an express provision of the insurance contract by failing to defend in the civil action. The pertinent provisions in the application for the public official bond provides that the principal agrees:

> to indemnify the Company against all loss, liability, costs, damages, attorneys' fees and expenses whatever which the Company may sustain or incur ... in consequence of having executed said suretyship and in enforcing any of the agreements herein contained ... that the Company shall have the right, and is hereby authorized but not required, to adjust, settle or compromise any claim, demand, suit or judgment, upon suretyship, unless I [principal] shall request the Company to litigate such claim or demand or defend such suit or to appeal from such judgment and shall deposit with the Company collateral satisfactory to it in kind and amount....

Further, the bond agreement clearly and specifically states that "the Surety shall not be liable hereunder for more in the aggregate than the above named penalty [$3,500.00]."

In this case, the principal, Ferguson, *never* informed Fidelity of the alleged assault in which he was involved during the performance of his duties as a police officer, nor did he inform Fidelity of the civil action filed against him as a result of the assault and the impending trial. Further, the appellant argues that Fidelity failed to defend its principal in the underlying civil action. However, the principal never requested that his surety defend him, nor did he make the requisite deposit of collateral with Fidelity. As a matter of fact, Fidelity did not have any knowledge of the civil action or the alleged assault by the principal until a little more than a month prior to trial. The principal, it appears, failed to comply with the terms in the bond agreement, not the surety.

Second, the appellant argues that Fidelity acted in bad faith in its settlement practices. The facts simply do not support this argument. The appellant has specifically alleged that the appellee has violated *Code,* 33–11–4(9)(b) and (f) which are as follows:

> [N]o person shall commit or perform with such frequency as to indicate a general business practice any of the following:
>
> ....
>
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> ....
>
> (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;....

■ The appellant asserts that the appellee failed to act reasonably promptly upon communications with respect to the bond in

---

8. In *Fidelity & Casualty Co. v. McNamara,* 127 W.Va. 731, 36 S.E.2d 402, 404 (1945), we held that
   > [t]he conflicting interests between principal and surety under a contract of suretyship ... must be solved in the public interest, which requires that the parties be protected against possible wrongdoing of each other, and that can only be done by reading into the contract a provision that good faith be exercised by the surety....

9. In *Continental Realty Corp. v. Andrew J. Crevolin Co.,* 380 F.Supp. 246 (S.D.W.Va.1974), the district court found that the surety could be held liable for amounts in excess of the penalty amount of the bond where the surety had breached its obligation to either take over the completion of a construction contract upon the abandonment by the contractor or to pay the cost of completion. *Id.* at 252–53.

question. The fact is that within less than thirty days after Fidelity was informed of the civil action, the company wrote to both the appellant's counsel and the principal requesting information about the civil suit. Neither the principal nor the appellant responded to the company's reasonable request. Further, within thirty days of learning of the confessed judgment entered into by the principal with the appellant, the surety offered to pay the penal amount of the bond, but the appellant refused to accept it. We could hardly find that either of these actions taken by Fidelity were either unreasonable or not promptly taken.

Likewise, we can not possibly find that the actions taken by Fidelity constituted anything but a good faith attempt to promptly, fairly and equitably settle the claim made by the appellant. This is especially clear since when the appellant first made demand, liability as far as Fidelity was concerned could not have been clear, since the company had not been given time to investigate the allegations made against its principal. Also, the action, at that time, had not gone to trial and therefore, no determination of liability had been made. As soon as liability was reasonably clear, i.e. as soon as Fidelity received the confessed judgment, the company offered to pay what it considered to be its liability under the bond.

We find no reason, either through breach of the express provision of the insurance contract or through bad faith on the part of the surety, to hold such surety liable for any portion of the confessed judgment other than the $3,500.00, the penal amount of the bond.

Based upon the foregoing, the judgment of the Circuit Court of Wayne County is affirmed.

Affirmed.